# EXHIBIT A

**`IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

JOSHUA CANE JELLISON, and
JESSICA MARIE JELLISON, his wife,

Plaintiffs,

vs.

PHH MORTGAGE CORPORATION,

Defendant.

No. 1413 of 2023

JURY TRIAL DEMANDED

Type of Pleading:

**COMPLAINT**

Filed on behalf of
Joshua Cane Jellison, and
Jessica Marie Jellison, his wife.
Plaintiffs.

Counsel of Record for this Party:
Christopher P. Skatell, Esquire
PA ID# 68838

Eastgate Shopping Plaza, 2nd Floor
5142 Route 30
Greensburg, PA 15601

(724) 853 - 0364

FILED IN PROTHONOTARY'S OFFICE
APR 1 1 2023
BY CLERK

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| JOSHUA CANE JELLISON, and<br>JESSICA MARIE JELLISON, his wife,<br><br>Plaintiffs,<br><br>vs.<br><br>PHH MORTGAGE CORPORATION,<br><br>Defendant. | ) | No. ____________ |

## NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the complaint or for any claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

IF YOU CANNOT AFFORD A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ON AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
WESTMORELAND BAR ASSOCIATION
P.O. BOX 565
GREENSBURG, PA 15601
(724) 834-8490
http://lrs.westbar.org

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| JOSHUA CANE JELLISON, and<br>JESSICA MARIE JELLISON, his wife,<br><br>Plaintiffs,<br><br>vs.<br><br>PHH MORTGAGE CORPORATION,<br><br>Defendant. | ) | No. ___________________ |

**COMPLAINT**

AND NOW, comes the Plaintiffs, Joshua Cane Jellison and Jessica Marie Jellison, his wife, by and through their attorney, Christopher P. Skatell, respectfully filing this Complaint and averring the following:

1. The Plaintiffs, Joshua Cane Jellison (hereinafter referred to as "Josh") and Jessica Marie Jellison (hereinafter referred to as "Jessica"), are a married couple residing at 126 Pax View Hills Dr., City of Latrobe, County of Westmoreland, Commonwealth of Pennsylvania, 15650.

2. The Defendant, PHH Mortgage Corporation (hereinafter referred to as "PHH Mortgage"), is a foreign business corporation which does business in Pennsylvania and has an address of 1 Mortgage Way, Mount Laurel, New Jersey, 08054.

3. Plaza Home Mortgage, Inc. (hereinafter referred to as "PHM") is a non-party foreign business corporation engaged in the business of providing mortgages to home buyers.

## FACTUAL BACKGROUND

4. On or about October 9, 2018, the Plaintiffs purchased real property located at 126 Pax View Hills Dr., Latrobe, PA 15650 (see Deed attached hereto, made a part hereof, and marked as "Exhibit A").

5. On or about October 9, 2018, the Plaintiffs took out a mortgage for the purchase of the property referenced above through Plaza Home Mortgage (hereinafter referred to as "PHM") (a copy of said Mortgage is attached hereto, made a part hereof, and marked as "Exhibit B").

6. On or about May 29, 2020, PHM assigned its right and interest in the aforementioned mortgage to the Defendant, PHH Mortgage (a copy of said Assignment of Mortgage is attached hereto, made a part hereof, and marked as "Exhibit C").

7. In or about March of 2020, the Plaintiffs were notified that due to the pandemic (covid-19), they were not required to make their monthly payments due to a temporary mortgage forbearance and were directed to complete an application for mortgage assistance.

8. Plaintiffs then completed and submitted their application on or about March 20, 2020; Plaintiffs' application was ultimately approved.

9. After approximately 12 months, the mortgage forbearance ended, and Defendant began seeking payment for the missed mortgage payments, or in the alternative an agreement for repayment of the delayed mortgage payments.

10. In furtherance of the same, the Defendant offered a resolution for the delayed mortgage payments in the form of a FHA Covid-19 Recovery Standalone Partial Claim Mortgage (hereinafter referred to as the "PCM").

11. More particularly, the Defendant offered to the Plaintiffs the option to enter into the PCM, wherein the Federal Housing Administration, through the Secretary of Housing and Urban Development (hereinafter referred to as "FHA") would purchase the outstanding debt and secure it with a second mortgage position that would not require any monthly payment until the property is sold or the Plaintiffs' mortgage with the Defendant is paid off or refinanced.

12. Further, the PCM would not carry any interest and did not have any fees or charges.

13. Plaintiffs accepted Defendant's offer, completed the necessary paperwork, and submitted the same as directed by the Defendant.

14. The Defendant then set out on a course of bad faith conduct designed to place themselves in a position to foreclose on the mortgage in an attempt to take the Plaintiffs' property from them.

15. More specifically, the Defendant rejected the paperwork, claiming that it arrived late, despite the fact that it was delivered via Fedex and was delivered timely.

16. Defendant then directed the Plaintiffs to resubmit the paperwork and gave a new due date for the same.

17. Plaintiffs completed and resubmitted the required paperwork, which the Defendant again denied due to the notary using Plaintiff Josh's middle initial as opposed to his full name.

18. Despite the Plaintiffs being preapproved and submitting the required paperwork twice, the Defendant continued its course of bad faith conduct

by issuing a Notice of Intent to Foreclose on May 3, 2022 based on the outstanding balance of the delayed mortgage payments (see Notice attached hereto, made a part hereof, and marked as "Exhibit D").

19. Plaintiffs then retained counsel, and the Defendant again made the same offer as detailed above, namely to enter the PCM to resolve the delayed mortgage payments.

20. The Plaintiffs again accepted the Defendant's offer and went through the process of re-signing and submitting the necessary paperwork to effectuate the PCM and stop the mortgage foreclosure process.

21. The PCM paperwork was to be submitted by May 23, 2022 (see the PCM information summary attached hereto, made a part hereof, and marked as "Exhibit E").

22. Defendants mailed the completed PCM paperwork on May 20, 2022 via Fedex, which was delivered to the Defendant on May 23, 2022 at 8:52a.m. (see copy of submitted paperwork attached hereto, made a part hereof, and marked as "Exhibit F") (also see Fedex proof of delivery attached hereto, made a part hereof, and marked as Exhibit "G").

23. In addition to the above, the Plaintiffs were also required to make a monthly payment in the amount of $2,179.46 by June 1, 2022. (see Exhibit E).

24. As such, Plaintiffs mailed the required monthly payment in the amount of $2,179.46 on May 20, 2022 (see cover letter and copy of check attached hereto, made a part hereof, and marked as "Exhibit H").

25. Accordingly, Plaintiffs completed the process of entering the PCM, thereby placing their account in good standing.

26. The Defendants then learned on June 14, 2022 that despite the fact that they completed all of the necessary paperwork for the PCM, timely submitted the same, and timely made the required June 1, 2022 payment, the Defendant again rejected the Plaintiffs' application for the PCM; no written notification of rejection was ever sent to the Plaintiffs or their attorney.

27. More specifically, the Defendant rejected the paperwork, stating that they did not like the notary's handwriting with respect to Jessica Marie Jellison's middle name as it was written on one of the documents, claiming that "Marie" looked like "Marre" (the Promissory Notes and Partial Claim Mortgage paperwork containing the notarized signatures are included in Exhibit F).

28. The Defendant's rejection and citing the handwriting of the notary constitutes the Defendant's continued bad faith actions, as the Plaintiffs appeared in front of a notary, whose function and purpose is specifically to verify, by looking at the Plaintiffs' photo ID, that they are who they say they are.

29. On June 14, 2022, the Defendant then emailed an unexecuted Promissory Note and Partial Claim mortgage and directed the Plaintiffs to re-complete and re-submit the paperwork, yet again, and to mail it out by the end of that week via Fedex so that they would be delivered during the beginning of the following week.

30. As such, the Plaintiffs again completed the required paperwork for the PCM and mailed the same via Fedex at the end of that week, on June 17, 2022, as instructed by the Defendant (see cover letter attached hereto, made a part hereof, and marked as "Exhibit I").

31. The completed PCM paperwork was then delivered to the Defendant on June 20, 2022 at 9:02a.m. (see Fedex tracking and delivery confirmation attached hereto, made a part hereof, and marked as "Exhibit J").

32. The Defendant then continued its course of bad faith conduct by *again* rejecting the PCM paperwork.

33. More specifically, the Plaintiffs learned during a previously scheduled phone call with the Defendant on June 29, 2022 that the paperwork was again rejected, claiming that it was due by June 18, 2022.

34. Defendant never sent any written notification of the above denial to the Plaintiffs or to their Counsel.

35. Plaintiffs then sent a letter of appeal to the Defendant on July 1, 2022.

36. The Defendant again continued its course of bad faith conduct by sending new Notices of Intention to Foreclose Mortgage to the Plaintiffs, all while there were two appeals pending by the Plaintiffs.

37. In addition, on or about July 8, 2022, the Plaintiffs received an "Off-Scheduled Escrow Statement" dated June 27, 2022, in which the Defendant notified the Plaintiffs that there was a surplus of $1,314.54 in their escrow account, and that the Defendant was retaining the same due to an alleged delinquent mortgage (see Notice of the same attached hereto, made a part hereof, and marked as "Exhibit K").

38. Plaintiffs then sent a formal letter of appeal to the Defendant's decision to retain the escrow overage (see letter of appeal attached hereto, made a part hereof, and marked as "Exhibit L").

39. To this day, the Defendant has never responded to the appeal, nor has it ever returned the overage or accounted for the $1,314.54, despite the Plaintiffs' account being in good standing.

40. In addition to the above, the Defendant's course of bad conduct is also evidenced by their lack of response to the majority of Plaintiffs' Counsel's correspondences. Furthermore, on the rare occasion that the Defendant sent a letter of response, it was a general response and failed to identify to which of Plaintiffs' letters it was responding, thus making any response meaningless.

41. During the above timeline of events, and on a parallel track, the Defendant also engaged in bad faith conduct by continually stating that it did not have proof of hazard insurance coverage for random time frames and stating that it was going to force purchase insurance on the Plaintiffs' behalf, some of which was for time frames already past.

42. More specifically, the Defendant first sent a notification of lack of then-current coverage on June 1, 2022 (see Notice attached hereto, made a part hereof, and marked as "Exhibit M").

43. The Plaintiffs responded on June 15, 2022 by forwarding proof of insurance coverage which showed coverage from April 1, 2022 to April 1, 2023 (see cover letter and proof of insurance attached hereto, made a part hereof, and marked as "Exhibit N").

44. On or about June 16, 2022, the Defendant sent a letter acknowledging receipt of the aforementioned proof of insurance, but claimed that there was no insurance for the period July 16, 2021 to April 1, 2022 and that it forced purchase insurance for this past time frame, and that it would issue a credit in the amount of $1,258.00 upon receipt of proof of coverage.

45. On or about July 1, 2022, the Plaintiffs sent proof that it had insurance in place for the period of July 16, 2021 to April 1, 2022 via two different polices (one valid from August 19, 2020 to August 19, 2021 and one valid from August 19, 2021 to August 19, 2022) (see cover letter and proof of insurance attached hereto, made a part hereof, and marked as "Exhibit O").

46. By correspondence of July 7, 2022, the Defendant acknowledged receipt of the two insurance policies referenced in Paragraph 45 above.

47. The Defendant has never provided proof that it issued the aforementioned $1,258.00 credit and has never accounted for the same.

48. However, Defendant then continued its bad faith conduct by stating in its July 7, 2022 correspondence that there was yet another gap in insurance coverage from July 16, 2021 to August 19, 2021, and that Plaintiffs' account was therefore charged $165.00 for this past time frame (see Defendant's correspondence attached hereto, made a part hereof, and marked as "Exhibit P").

49. As of July 7, 2022 the Defendant already acknowledged receipt of proof of insurance coverage for the periods of April 1, 2022 to April 1, 2023, August 19, 2020 to August 19, 2021, and August 19, 2021 to August 19, 2022.

50. As such, Defendant had proof of coverage for the time frame of August 19, 2020 through April 1, 2023, yet it was still acting in bad faith by force purchase insurance and charging Plaintiffs $165.00 for the same for the period of July 16, 2021 to August 19, 2021 (Exhibit P).

51. By correspondence dated July 22, 2022, the Plaintiffs notified the Defendant that it already acknowledged proof of coverage for the July 16,

2021 to August 19, 2021 time frame (see correspondence attached hereto, made a part hereof, and marked as "Exhibit Q").

52. In light of the above, Plaintiffs requested in its July 22, 2022 correspondence that the Defendant confirm that the charge of $165.00 referenced in its July 7, 2022 correspondence has been refunded.

53. To date, the Defendant has not responded to Plaintiffs' July 7, 2022 correspondence and has not confirmed that the $165.00 charge has been reversed; Plaintiffs have no idea if the charge has been refunded.

54. On or about October 17, 2022, after months of attempting to wrongfully foreclose and take the Plaintiffs' property, the Defendant sent a correspondences stating that it reversed its denial of the PCM and directing the Plaintiffs to forward payment in the amount of $8,717.84.

55. Despite the fact that the Plaintiffs had already made all payments necessary to effectuate the entry of the PCM, and despite the fact that the Plaintiffs had been making its monthly payments while the various attempts to secure the PCM were occurring, the Defendant was still acting in bad faith by requiring the $8,717.84 payment; Nonetheless, Plaintiffs forwarded the payment on October 25, 2022 (see correspondence attached hereto, made a part hereof, and marked as "Exhibit R").

56. In addition to the above, Plaintiffs also recently learned that the Defendant had failed to pay the Plaintiffs' property taxes from their escrow account for the 2022 tax year.

57. Not only did Defendant fail to pay the aforementioned property taxes, but it failed to notify the Plaintiffs that it did not pay them.

58. As a direct and proximate result of Defendant's bad faith conduct, the Plaintiffs have incurred damages in the form of attorney's fees needed to stop the Defendant's improper attempt to take their property.

59. As a direct and proximate cause of the Defendant's bad faith conduct, the Plaintiffs' have been damaged in that their credit report was negatively impacted and caused their credit score to be significantly reduced; they are now unable to get a loan, which has also affected the Plaintiffs' ability to run their business.

60. As a direct and proximate result of the Defendant's bad faith conduct, the Plaintiffs incurred damages in that they had to pay real estate taxes that the Defendant should have paid and had to pay penalties and fees on the aforementioned property taxes.

**COUNT I – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 et. seq.**

61. Paragraphs 1-60 are incorporated herein as if fully set forth at length.

62. The Defendant is a person as defined under *73 P.S. § 201-2(2)*.

63. The Defendant is engaged in mortgage transactions, which is considered trade and commerce as defined under *73 P.S. § 201-2(3)*.

64. Defendant engaged in unfair trade and deceptive practices in violation of *73 P.S. § 201-2(4)(xxi)*.

65. More specifically, the Defendant engaged in fraudulent or deceptive conduct in that it represented to the Defendant on numerous occasions that they were pre-qualified to enter into the PCM to resolve the delayed

mortgage payments and that all they had to do was compete and submit the necessary paperwork.

66. The Plaintiffs justifiably relied upon the Defendant's representations, which they made multiple times.

67. Defendant then, in bad faith, improperly and without just cause rejected Plaintiffs' paperwork no less than five (5) times as detailed above, all while issuing Notices of Intention to Foreclose on the property.

68. Defendant's conduct detailed above constituted fraudulent or deceptive conduct which created the likelihood of confusion or misunderstanding in violation of *73 P.S. § 201-2(4)(xxi).*

69. As a direct and proximate result of their reliance on Defendants' representations, (1) Plaintiffs incurred attorney's fees necessary to secure their entry into the PCM and to prevent the Defendant from foreclosing on the Plaintiffs' property, (2) Plaintiffs' credit score was substantially reduced which has severely affected their ability to run their business, and (3) Plaintiff has incurred substantial notary fees having to continually and unnecessarily resubmit their paperwork over and over.

70. Pursuant to the Unfair Trade Practices and Consumer Protection law ("UTPCPL"), Defendant is liable for actual damages, treble damages, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against the Defendant in excess of $30,000.00, treble damages, reasonable attorney's fees, and costs.

**COUNT II – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 et. seq.**

71. Paragraphs 1-70 are incorporated herein as if fully set forth at length.

72. Defendant engaged in unfair trade and deceptive practices in violation of *73 P.S. § 201-2(4)(xxi).*

73. More specifically, in or about May of 2022, Defendant offered to the Plaintiffs the option to enter into the PCM, wherein the FHA would purchase the outstanding debt and secure it with a second mortgage position that would not require any monthly payment until the property is sold or the Plaintiffs' mortgage with the Defendant is paid off or refinanced. Further, the PCM would not carry any interest and did not have any fees or charges.

74. Plaintiffs accepted Defendant's offer, fully completed the necessary paperwork, and timely submitted the same as directed by the Defendant.

75. In addition to submitting the above referenced paperwork, Defendant told the Plaintiffs that they also were required to make a payment in the amount of $2,179.46 (see Exhibit E) to bring their account in good standing.

76. As such, and in reliance on the Defendant's representations, the Plaintiffs timely made the required payment (see Exhibit H).

77. The Defendant then subsequently rejected the PCM paperwork without any written notice to the Plaintiffs and retained the aforementioned payment.

78. The Plaintiffs justifiably relied upon the Defendant's representation that upon making the aforementioned payment, that their account would be in good standing.

79. Defendant's conduct detailed above constituted fraudulent or deceptive conduct which created the likelihood of confusion or misunderstanding in violation of *73 P.S. § 201-2(4)(xxi).*

80. As a direct and proximate result of their reliance on Defendants' representations, (1) Plaintiffs incurred attorney's fees necessary to again attempt to secure their entry into the PCM and to prevent the Defendant from foreclosing on the Plaintiffs' property, (2) Plaintiffs' credit score was substantially reduced which has severely affected their ability to run their business, (3) Plaintiff has incurred substantial notary fees having to continually and unnecessarily resubmit their paperwork over and over, and (4) Plaintiffs made a payment in the amount of $2,179.46 that the Defendant improperly retained in light of denying their entry into the PCM.

81. Pursuant to the Unfair Trade Practices and Consumer Protection law ("UTPCPL"), Defendant is liable for actual damages, treble damages, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against the Defendant in excess of $30,000.00, treble damages, reasonable attorney's fees, and costs.

**COUNT III – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 et. seq.**

82. Paragraphs 1-81 are incorporated herein as if fully set forth at length.

83. Defendant engaged in unfair trade and deceptive practices in violation of *73 P.S. § 201-2(4)(xxi).*

84. More specifically, on or about October 17, 2022, Defendant notified the Plaintiffs that it had reversed its denial of the PCM and directed the Plaintiffs to make a payment in the amount of $8,717.84.

85. Plaintiffs relied on Defendant's representation that such payment was required and submitted the requested check (see Exhibit R).

86. Plaintiffs believe and aver that said payment was not actually necessary, as the Defendant had reversed its earlier denial, had already received a special payment from the Plaintiffs as referenced in Count II above, and had been receiving the Plaintiffs' monthly payment since the May of 2022 attempt to enter the PCM.

87. The Plaintiffs justifiably relied upon the Defendant's representation that making the $8,717.84 payment was necessary.

88. Defendant acted in bad faith and with deceptive conduct by demanding the aforementioned payment.

89. Defendant's conduct detailed above constituted fraudulent or deceptive conduct which created the likelihood of confusion or misunderstanding in violation of *73 P.S. § 201-2(4)(xxi)*.

90. As a direct and proximate result of their reliance on Defendants' representations, Plaintiffs incurred damages in that it was deceived into making a $8,717.84 payment that was not necessary to compete the entry into the PCM.

91. Pursuant to the Unfair Trade Practices and Consumer Protection law ("UTPCPL"), Defendant is liable for actual damages, treble damages, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against the Defendant in excess of $30,000.00, treble damages, reasonable attorney's fees, and costs.

**COUNT IV – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 et. seq.**

92. Paragraphs 1-91 are incorporated herein as if fully set forth at length.

93. On or about June 27, 2022, Defendant sent an Off-Scheduled Escrow Statement notifying the Plaintiffs that there was a surplus of $1,314.54 in their escrow account, and that it was retaining the same due to an alleged delinquent mortgage (see Exhibit K).

94. Plaintiff then sent a formal letter of appeal to Defendant's decision to retain the mortgage escrow surplus (see Exhibit L).

95. To this day, the Defendant has failed to return the escrow surplus, has never responded to Plaintiffs' appeal letter, and has never accounted for said monies.

96. Defendant engaged in deceptive acts which created the likelihood of confusion or misunderstanding in an attempt to improperly retain the escrow surplus by falsely claiming that the mortgage was in default when in fact the Plaintiffs entered into the PCM (which the Defendant had improperly denied as set forth above).

97. Defendant engaged in deceptive acts which created the likelihood of confusion or misunderstanding in that the Defendant has never responded to Plaintiffs' appeal letter and have apparently retained the escrow surplus despite the Plaintiffs denial of the PCM being reversed.

98. Defendant's conduct detailed above constituted fraudulent or deceptive conduct which created the likelihood of confusion or misunderstanding in violation of *73 P.S. § 201-2(4)(xxi)*.

99. As a direct and proximate result of their reliance on Defendants' representations, Plaintiffs incurred damages in the amount of $1,314.54 plus attorney's fees.

100. Pursuant to the Unfair Trade Practices and Consumer Protection law ("UTPCPL"), Defendant is liable for actual damages, treble damages, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against the Defendant in excess of $1,314.54, treble damages, reasonable attorney's fees, and costs.

**COUNT V – VIOLATION OF UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 et. seq.**

101. Paragraphs 1-100 are incorporated herein as if fully set forth at length.

102. On or about July 7, 2022, notified the Plaintiffs that there was a gap in their home owners insurance coverage for the period of July 16, 2021 to August 19, 2021, and that the Defendant therefore force purchased insurance and charged their account in the amount of $165.00 (see Exhibit P).

103. As of July 7, 2022, Defendant had already acknowledged receipt of proof of insurance coverage for the periods of April 1, 2022 to April 1, 2023, August 19, 2020 to August 19, 2021, and August 19, 2021 to August 19, 2022.

104. As such, Defendant was already in possession of proof of insurance coverage for the alleged default period of July 16, 2021 to August 19, 2021.

105. Accordingly, Plaintiffs notified the Defendant by correspondence dated July 22, 2022 that there was insurance coverage for the time period in question, and that the Defendant had already acknowledged receipt of the same (see Exhibit Q).

106. To date, the Defendant has never responded to Plaintiffs' letter and has never provided any proof that the $165.00 was refunded.

107. Defendant engaged in deceptive acts which created the likelihood of confusion or misunderstanding in an attempt to improperly charge the Plaintiffs $165.00 by falsely claiming that there was a gap in insurance coverage when in fact the Defendant knew that there was not a gap in coverage.

108. Defendant engaged in deceptive acts which created the likelihood of confusion or misunderstanding in that the Defendant has never responded to Plaintiffs' July 22, 2022 letter and has apparently failed to refund the $165.00 charge.

109. Defendant's conduct detailed above constituted fraudulent or deceptive conduct which created the likelihood of confusion or misunderstanding in violation of *73 P.S. § 201-2(4)(xxi)*.

110. As a direct and proximate result of their reliance on Defendants' representations, Plaintiffs incurred damages in the amount of $165.00 plus attorney's fees.

111. Pursuant to the Unfair Trade Practices and Consumer Protection law ("UTPCPL"), Defendant is liable for actual damages, treble damages, costs, and reasonable attorney's fees.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against the Defendant in the amount of $165.00, treble damages, reasonable attorney's fees, and costs.

**COUNT VI – BREACH OF FIDUCIARY DUTY**

112. Paragraphs 1-111 are incorporated herein as if fully set forth at length.

113. At all times relevant herein, a fiduciary relationship exists between Plaintiffs and Defendant, as the Defendant holds the Plaintiff's mortgage.

114. In addition, there exists an escrow account with the Defendant related to the Plaintiffs' mortgage account.

115. The Escrow account funds are to be used by the Defendant to pay the Plaintiffs' property taxes, and the Plaintiffs paid into the same on a regular basis.

116. The Defendant has a fiduciary duty to pay the Plaintiffs' property taxes from their escrow account.

117. The Defendant failed to pay the Plaintiffs property taxes for 2022, despite there being funds for the same.

118. The Defendants also failed to notify the Plaintiffs that it was not going to pay the aforementioned property taxes.

119. Plaintiffs learned that their property taxes had not been paid when they received a delinquency notice from the Westmoreland County Tax Claim Bureau stating that the 2022 property taxes were delinquent in the amount of $610.21.

120. Plaintiffs had to direct pay the $610.21 to the Westmoreland County Tax Claim Bureau.

121. By failing to pay the Plaintiffs' property taxes from the escrow account and failing to inform the Plaintiffs that it was not paying them, the Plaintiff intentionally failed to act in good faith and solely for Plaintiffs' benefit.

122. As a direct and proximate result of Defendant's breach of fiduciary duty, the Plaintiffs were damaged in the amount of $610.21, which included penalties and interest.

123. As such, Plaintiffs seek damages in the amount of $610.21.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against the Defendant in the amount of $610.21, costs of this action, and any other award the Court deems just and proper.

**COUNT VII – BREACH OF FIDUCIARY DUTY**

124. Paragraphs 1-123 are incorporated herein as if fully set forth at length.

125. At all times relevant herein, a fiduciary relationship existed between the Plaintiffs and Defendant, as the Defendant holds the Plaintiff's mortgage and also manages the Plaintiffs' escrow account.

126. The Defendant negligently or intentionally failed to act in good faith and for the benefit of the Plaintiffs, and in fact acted in bad faith in the following ways:

a. rejecting the PCM paperwork prior to May of 2022, falsely stating that the papers were submitted late;

b. again rejecting the PCM paperwork prior to May of 2022 due to the notary using Josh's middle initial as opposed to his full middle name;

c. issuing a Notice of Intent to Foreclose on May 3, 2022 after improperly rejecting the PCM paperwork;

d. directing the Plaintiffs to again resubmit the PCM paperwork by May 23, 2022 (which the Plaintiffs did) and requiring the Plaintiffs to make a $2,179.46 payment (which Plaintiffs timely did), and then yet again denying the PCM paperwork because they did not like the notary's handwriting with respect to Jessica's middle name;

e. failing to issue any written notice of the rejection of the May 23, 2022 PCM paperwork;

f. directing the Plaintiffs to again resubmit the PCM paperwork by the beginning of the week of June 20, 2022 (which the Plaintiffs did), and then again denying the PCM paperwork because, claiming that it was submitted late when it was not;

g. failing to issue any written notification of the rejection of the June 20, 2022 PCM paperwork;

h. again issuing a Notice of Intent to Foreclose despite the improper PCM denials and two pending appeals to those decisions;

i. improperly retaining a $1,314.54 escrow surplus, failing to respond to the Plaintiffs' appeal of Defendant's decision to retain the escrow surplus, and failing to ever account for those monies;

j. failing to respond to the overwhelming majority of Plaintiffs' correspondences, and on the rare occasion a response was sent, failing to identify to which correspondence the response applied;

k. improperly charging and failing to refund $1,258.00 for an alleged home owner's insurance gap, which did not exist.

l. improperly charging $165.00 for an alleged home owner's insurance gap, which did not exist, after already confirming that it had received proof of coverage;

m. failing to refund the aforementioned $165.00 or to even account for the same;

n. improperly requiring a payment of $8,717.84 to complete entry into the PCM after the Defendant eventually reversed an earlier denial, despite the fact that the Plaintiffs had already made all required payments;

o. failing to pay the Plaintiffs' 2022 property taxes; and

p. failing to notify the Plaintiffs that it would not be paying the 2022 property taxes.

127. The acts identified above constitute purposeful and bad faith actions which constitute a breach of Defendant's fiduciary duty owed to the Plaintiffs.

128. As a direct and proximate result of Defendant's breach of fiduciary duty, the Plaintiffs have been damaged in that (1) Plaintiffs have incurred attorney's fees necessary to again attempt to secure their entry into the PCM and to prevent the Defendant from foreclosing on the Plaintiffs' property, (2) Plaintiffs' credit score was substantially reduced which has severely affected their ability to run their business, (3) Plaintiff has incurred substantial notary fees having to continually and unnecessarily resubmit their paperwork over and over, (4) Defendant improperly retained Plaintiff's $1,314.54 escrow surplus, (5) Defendant improperly charged the Plaintiffs $165.00 for home owners' insurance, and (6) Plaintiffs were forced to pay an additional $8,717.84 upon reversal of the PCM denial.

129. The Defendant's actions were malicious, willful, and reckless, and were made with a bad motive or with reckless indifference to the Plaintiffs' interests in that they set out on a purposeful course of bad faith conduct as detailed above.

130. Plaintiffs hereby seeks punitive damages.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor and against the Defendant in excess of $30,000.00, plus costs, punitive damages, and any other damages the Court deems just and proper.

Respectfully Submitted,

Christopher P. Skatell, Esquire

**VERIFICATION**

I verify that the statements made in the foregoing document are true and correct to the best of my information, knowledge, and/or belief. I understand that false statements herein made are subject to the penalties of 18 Pa. C. S. Section 4909 relating to unsworn falsification to authorities.

Date: 4-11-23.

Joshua Cane Jellison, Plaintiff

**VERIFICATION**

I verify that the statements made in the foregoing document are true and correct to the best of my information, knowledge, and/or belief. I understand that false statements herein made are subject to the penalties of 18 Pa. C. S. Section 4909 relating to unsworn falsification to authorities.

Date: 4-11-23

Jessica Marie Jellison

Jessica Marie Jellison, Plaintiff

18-0647

UPI 61-06197-00000
MAP 61-06-00-0-148

I hereby CERTIF[Y] that this document is recorde[d] in the RECORDERS OFFIC[E] of Westmoreland Count[y] Pennsylvan[ia]
Tom Murphy • Recorder of Deed[s]

DO NOT PUBLISH

UPI 61-06196-00000
MAP 61-06-00-0-066

# This Indenture

**Made** *this* 9TH *day of* October *, 2018,*

**Between**, *LAUREL PAXTON RUSH and WILLIAM C. PAXTON, III, Executors of the ESTATE OF WILLIAM C. PAXTON, II, a/k/a WILLIAM CAMERON PAXTON, late of the Township of Unity, County of Westmoreland, Commonwealth of Pennsylvania, hereinafter "Grantor"*

Instr:201810110032532 10/11/2018
P:1 of 5 F:$131.75 11:33AM
Tom Murphy T20180037744
Westmoreland County RecorderC

*A N D*

201810110032532
10/11/2018 11:33:30AM T20180037744

| | |
|---|---|
| PA TRF TAX | $2830.00 |
| GREATER LATROBE | $1415.00 |
| UNITY TWP | $1415.00 |
| TOTAL TAX | $5660.00 |

*JOSHUA CANE JELLISON and JESSICA MARIE JELLISON, his wife, hereinafter "Grantees"*

*WHEREAS, the said William C. Paxton, II, a/k/a William Cameron Paxton, became in his lifetime seized in fee certain parcels of land situate in the Township of Unity, County of Westmoreland, Commonwealth of Pennsylvania, and more particularly described hereafter; and being so seized thereof died testate on April 22, 2016, Letters Testamentary having been granted by the Register of Wills Office, Westmoreland County, Pennsylvania on April 27, 2016, and docketed at No. 65-16-0851 recourse thereunto being had,*

**Now this Indenture Witnesseth,** *That the said Grantor for and in consideration of the sum of TWO HUNDRED EIGHTY-THREE THOUSAND AND 00/100 ------($283,000.00)------ Dollars, United States, to it in hand paid by the said Grantees at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, released, and confirmed, and by these presents does grant, bargain, sell, alien, release and confirm unto the said Grantees, their successors and assigns*

*FIRST:*

**All** *that certain tract of land situate in the Township of Unity, County of Westmoreland and Commonwealth of Pennsylvania, bounded and described as follows:*

*BEGINNING at a point on line of land herein conveyed and other land now or formerly of the Grantor herein [said point of beginning being further described as being the following courses and distances from the point in Township Road No. 898 at its intersection with the southerly side of a 20 foot private road, (at which point the said private road runs along the no[rtherly line of] land now or formerly of Ronald I. Shaw and along the southerly line of land now [...] Regis A. Neiman) at the northwesterly corner of land now or formerly of Ronald [...]*

EXHIBIT
A

*said point in Township Road No. 898, along line of lands now or formerly of Ronald I. Shaw, Russel K. Loveridge and Stanley Krajick, et ux., North 65° 09' 56" East, 743.00 feet to a point; thence along line of land now or formerly of said Krajick, South 50° 50' 04" East, 153.00 feet to a point; thence through lands now or formerly of the Grantor herein, et ux., North 89° 39' East, 98.77 feet to a pin, the place of beginning]; thence from said point of beginning, along line of land herein conveyed and line of other land now or formerly of the Grantor herein, North 74° 19' East, 208.71 feet to a point; thence along same, South 15° 41' East, 208.71 feet to a pin; thence along same, South 74° 19' West, 208.71 feet to a pin; thence along same, North 15° 41' West, 208.71 feet to a pin, the place of beginning.*

*CONTAINING 1.00 acre in accordance with survey of Gibson-Thomas Engineering Company dated March 30, 1978.*

*TOGETHER with a right of way to the Grantees, their heirs and assigns, for the free and uninterrupted use, liberty and privilege of, and passage in and along the said 20 foot private road for the purpose of free ingress, egress and regress to and from said tract of land described above, the said right of way extending over a 20 foot private road from the said tract of land conveyed herein to the said Township Road No. 898, the centerline of said right of way being described as follows: beginning at a point in the center of the said 20 foot right of way at the point in the said Township Road No. 898; thence through the center of the said 20 foot private road, North 64° 39' 56" East, 420.00 feet to a point; thence along same, North 49° 16' East, 139.61 feet to a point; thence along same, North 56° 06' East, 150.00 feet to a point; thence along same, North 6° 12' West, 51.16 feet to a point; thence along same, South 69° 31' East, 264.92 feet to a point; thence along same, South 37° 40' East, 131.84 feet to a point on line of land herein conveyed.*

*EXCEPTING AND RESERVING all mineral, coal, gas, oil and other subterranean rights, royalties and privileges not heretofore conveyed, provided, however, Grantees shall have the right to any free gas to which the Grantor is entitled arising out of any existing gas lease.*

*UNDER AND SUBJECT to any other exceptions and reservations as the same may appear in prior instruments of record.*

*Being Tax Map No. 61-06-00-0-148*

*BEING the same tract of land conveyed to William Cameron Paxton and Glenda B. Paxton, his wife, by deed of William Cameron Paxton and Glenda B. Paxton, his wife, dated October 29, 2001, and recorded in the office of the Recorder of Deeds of Westmoreland County, Pennsylvania at Instrument No. 200110310060407. The said Glenda B. Paxton died on September 12, 2009, thereby vesting full title in William Cameron Paxton, by operation of law.*

***SECOND:***

All *that certain tract of land situate in the Township of Unity, County of Westmoreland and Commonwealth of Pennsylvania, being Lot 2 in the Paxton Plan recorded in the Office of the Recorder of Deeds of Westmoreland County, Pennsylvania, Plan Book Volume 91, Page 1927, bounded and described as follows:*

*BEGINNING at a point in the center of Township Road 898 at the southwesterly corner of land now or formerly of Joseph S. Mancuso, Sr., et ux.; thence from said point of beginning along line of land now or formerly of said Joseph S. Mancuso, Sr., et ux., North 65° 13' 48" East, 354.00 feet to an existing iron pin; thence along same, North 48° 45' 00" East, 159.04 feet to an iron pin; thence along same and along line of land now or formerly of Stephen Tulenko, North 39° 22' 07" West, 455.82 feet to an existing concrete monument; thence along line of land now or formerly of Vincent A. Battaglia, et ux., North 39° 04' 46" East, 31.00 feet to an iron pin at the southwest corner of Lot 1 in said Paxton Plan; thence along the southwest line of Lot 1 in said Paxton Plan, South 80° 38' 28" East, 903.41 feet to an existing iron pin; thence along line of land now or formerly of Helen E. Lemmon, South 85° 53' 07" East, 669.66 feet to an iron pin; thence along line of land now or formerly of Glenn W. Ross, et ux., South 43° 04' 15" West, 238.73 feet to an iron pin; thence along same, South 39° 16' 38" East, 310.30 feet to an iron pin; thence along line of lands now or formerly of Frank L. Stewart, Jr., et ux., South 49° 56' 56" West, 621.15 feet to an iron pin; thence along same, South 59° 11' 56" West, 251.84 feet to an iron pin; thence along same, North 32° 17' 15" West 244.12 feet to an iron pin; thence along line of lands now or formerly of Richard L. Schall, et ux., Ronald Mileca, et ux. and Stanley Krofick, et ux., North 18° 01' 01" West, 521.00 feet to an iron pin; thence along line of land of said Stanley Krofick, et ux., North 49° 55' 03" West, 144.53 feet to an iron pin; thence along same and along lands now of formerly of Douglas A. Perratone and Ronald J. Shaw, et ux., South 65° 43' 59" West, 732.82 feet to a point in the center of said Township Road 898; thence through the center of said Township Road 898, North 8° 17' 45" West, 15.02 feet to a point, the place of beginning.*

*EXCEPTING AND RESERVING from within the above described tract the 1.00 acre parcel already owned by the Grantor herein described in Deed Book Volume 2287, Page 73, as shown on said Paxton Plan as being located within the perimeter of the tract, conveyed herein, leaving a net balance of 18.16 acres being conveyed hereby in accordance with the survey of A.K. Ross and Son dated June 3, 1999, as forth on said Paxton Plan.*

*TOGETHER with the right of way for the purposes of ingress, egress and regress to and from the above described tract of land extending from Township Road 898, across Lot 2 of said Paxton Plan, having a maximum width of 30 feet where possible, as said right of way is shown on said Paxton Plan. This right of way shall be used in common with Lot 1 of said Paxton Plan and the 1 acre parcel located within the perimeter of said Lot 1, being conveyed herewith and described as parcel First, above.*

*EXCEPTING AND RESERVING all mineral, coal, gas, oil and other subterranean rights, royalties and privileges not heretofore conveyed, provided, however, Grantees shall have the right to any free gas to which the Grantor is entitled arising out of any existing gas lease.*

*UNDER AND SUBJECT to any other exceptions and reservations as the same may appear in prior instruments of record.*

Instr:201810110032532 10/11/2018
P:3 of 5 F:$131.75 11:33AM
Tom Murphy T20180037744
Westmoreland County RecorderC

*Being Tax Map No. 61-06-00-0-066.*

*BEING the same lot of land conveyed to William Cameron Paxton by deed of Donald E. Paxton and Cheryl E. Paxton, his wife, dated October 29, 2001, and recorded in the Office of the Recorder of Deeds of Westmoreland County at Instrument No. 200110310060406.*

*THE PRECISE RESIDENCE of the within Grantee is 126 Pax View Hills Lane, Latrobe, PA 15650.*

*Together with all and singular ways, waters, water courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging, or in anywise appertaining, and the reversions and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, use, trust, property, possession, claim and demand whatsoever in law, equity, or otherwise, howsoever, of, in, to, or out of the same:*

**To have and to hold** *the said hereditaments and premises hereby granted and released, or mentioned and intended so to be, with the appurtenances, unto the said Grantees, their heirs, successors and assigns, to and for the only proper use and behoof of the said Grantees, their heirs, successor or assigns, forever,*

*And the said Grantor does covenant, promise and agree that it will WARRANT SPECIALLY, the property hereby conveyed.*

NOTICE THE UNDERSIGNED, AS EVIDENCED BY THE SIGNATURE(S) TO THIS NOTICE AND THE ACCEPTANCE AND RECORDING OF THIS DEED, (IS, ARE) FULLY COGNIZANT OF THE FACT THAT THE UNDERSIGNED MAY NOT BE OBTAINING THE RIGHT OF PROTECTION AGAINST SUBSIDENCE, AS TO THE PROPERTY HEREIN CONVEYED, RESULTING FROM COAL MINING OPERATIONS AND THE PURCHASED PROPERTY, HEREIN CONVEYED, MAY BE PROTECTED FROM DAMAGE DUE TO MINE SUBSIDENCE BY A PRIVATE CONTRACT WITH THE OWNERS OF THE ECONOMIC INTEREST IN THE COAL. THIS NOTICE IS INSERTED HEREIN TO COMPLY WITH THE BITUMINOUS MINE SUBSIDENCE AND LAND CONSERVATION ACT OF 1966.

WITNESS: Dan B. Rafferty (as to both) — Jon Cone Jr — Jessica Marie Fleisan

NOTICE--THIS DOCUMENT MAY NOT (DOES NOT) SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHT OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE (HAVE) THE COMPLETE LEGAL RIGHT TO REMOVE ALL OF SUCH COAL AND, IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING, OR OTHER STRUCTURE ON OR IN SUCH LAND. THE INCLUSION OF THIS NOTICE DOES NOT ENLARGE OR RESTRICT OR MODIFY ANY LEGAL RIGHTS OR ESTATES OTHERWISE CREATED, TRANSFERRED, EXCEPTED OR RESERVED BY THIS INSTRUMENT. [This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984, as amended.]

Instr:201810110032532 10/11/2018
P:4 of 5 F:$131.75 11:33AM
Tom Murphy T20180037744
Westmoreland County RecorderC

**In Witness Whereof,** *The said Grantor has hereunto set their hands and seals the day and year first above written.*

*ESTATE OF WILLIAM C. PAXTON, II,*
*a/k/a WILLIAM CAMERON PAXTON*

*WITNESS:* [signature] [signature]

*BY:* [signature] Seal
*Laurel Paxton Rush, Co-Executor*

*BY:* [signature] Seal
*William C. Paxton, III, Co-Executor*

*Commonwealth of Pennsylvania*
*County of Westmoreland* } *SS*

*On this the* 9th *day of* October *, A.D. 2018 , before me* Daniel Gehring *the undersigned officer, personally appeared LAUREL PAXTON RUSH and WILLIAM C. PAXTON, III, Executors of the Estate of WILLIAM C. PAXTON, II, a/k/a WILLIAM CAMERON PAXTON, known to me (or satisfactorily proven) to be the persons whose names are subscribed to the within instrument and acknowledged that they executed the same for the purposes therein contained.*

**In Witness Whereof,** *I hereunto set my hand and official seal.*

[signature]

*Notary Public*
*(Title of Officer)*

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Daniel Gehring, Notary Public
City of Greensburg, Westmoreland County
My Commission Expires Jan. 18, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

Instr:201810110032532 10/11/2018
P:5 of 5 F:$131.75 11:33AM
Tom Murphy T20180037744
Westmoreland County RecorderC

*Dennis B. Rafferty, Esquire*
*QuatriniRafferty, PC*
*550 East Pittsburgh Street*
*Greensburg, PA 15601*
*724-837-0080*

After Recording Return To:
Plaza Home Mortgage C/O
First American Solutions
1795 International Way
Idaho Falls, ID 83402
ATTN: Final Docs

I hereby CERTIFY that this document is recorded in the RECORDERS OFFICE of Westmoreland County Pennsylvania
Tom Murphy • Recorder of Deeds

Prepared By:
Jessica Wilson
Plaza Home Mortgage Inc
500 EDGEWATER DR #566
WAKEFIELD, MA 01880

Instr:201810110032533 10/11/2018
P:1 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC

Property Address:
126 Pax View Hills DRIVE
Latrobe, PA 15650
PIN: 61-06-00-0-066 & 61-06-00-0-148

[Space Above This Line For Recording Data]

# MORTGAGE

Jellison
Loan #: 2018095004
MIN: 100109820180950049
MERS Phone: 1-888-679-6377
PIN: 61-06-00-0-066 & 61-06-00-0-148
Case #: 442-4633063-703

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

**(A) "Security Instrument"** means this document, which is dated October 9, 2018, together with all Riders to this document.

**(B) "Borrower"** is Joshua Cane Jellison and Jessica Marie Jellison, husband and wife. Borrower is the mortgagor under this Security Instrument.

**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has a mailing address of P.O. Box 2026, Flint, MI 48501-2026, and a street address of 1901 E Voorhees Street, Suite C, Danville, IL 61834. The MERS telephone number is (888) 679-MERS.

**(D) "Lender"** is Plaza Home Mortgage Inc.. Lender is a Corporation organized and existing under the laws of California. Lender's address is 500 EDGEWATER DR #566, WAKEFIELD, MA



UPI 61-06197-00000
MAP 61-06-00-0-148

UPI 61-06198-00000
MAP 61-06-00-0-066

EXHIBIT B

Instr:201810110032533 10/11/2018
P:2 of 15 F:$151.75 11:34AM
T20180037744
Tom Murphy
Westmoreland County RecorderC



01880.

**(E) "Note"** means the promissory note signed by Borrower and dated October 9, 2018. The Note states that Borrower owes Lender Two Hundred Seventy-Seven Thousand Eight Hundred Seventy-Four And 00/100 Dollars (U.S. $277,874.00) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2048.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Planned Unit Development Rider

☐ Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non -appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

**(R) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Instr:201810110032533 10/11/2018
P:3 of 15 F:$151.75 11:34AM
T20180037744
Tom Murphy
Westmoreland County RecorderC

2018095004

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in the COUNTY of WESTMORELAND:
Legal description attached hereto and made a part of hereof
which currently has the address of 126 Pax View Hills DRIVE, Latrobe, Pennsylvania 15650 ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal

Instr:201810110032533 10/11/2018
P:4 of 15 F:$151.75 11:34AM
T20180037744
Tom Murphy
Westmoreland County RecorderC



balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the

Instr:201810110032533 10/11/2018
P:5 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC



Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall

Instr:201810110032533 10/11/2018
P:6 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC



become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series

Instr:201810110032533 10/11/2018
P:7 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC



of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's

satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy

Instr:201810110032533 10/11/2018
P:9 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC



including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument, or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Note holder agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and

Instr:201810110032533 10/11/2018
P:10 of 15 F:$151.75 11:34AM
T20180037744
Tom Murphy
Westmoreland County RecorderC



obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, subject to Applicable Law, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceedings; (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to

Instr:201810110032533 10/11/2018
P:11 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC



Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

**20. Borrower Not Third-Party Beneficiary to Contract of Insurance.** Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any

Instr:201810110032533 10/11/2018
P:12 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC



Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 18 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Effect of Survival Events.** Both before and after any Survival Event, as defined below, Borrower shall:

(a) pay Funds for Escrow Items or pay Escrow Items directly as provided in Section 3 of this Security Instrument;

(b) pay the amounts and take the actions required by Section 4 of this Security Instrument;

(c) maintain insurance coverages and take the other actions required by Section 5 of this Security Instrument;

(d) maintain, repair and restore the Property and take the other actions required by Section 7 of this Security Instrument;

(e) if this Security Instrument is on a leasehold, comply with all the provisions of the lease;

(f) treat any amounts disbursed by Lender under Section 9 of this Security Instrument as additional debt of Borrower secured by this Security Instrument;

(g) maintain and pay the premiums for Mortgage Insurance, or make payments to Lender if Mortgage Insurance coverage is not available, and take the other actions required by Section 3 of this Security Instrument;

**Exhibit A**

Instr:201810110032533 10/11/2018
P:13 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC

**PARCEL I:**

ALL that certain tract of land situate in Unity Township, Westmoreland County, Pennsylvania, bounded and described as follows:

BEGINNING at a point on line of land herein conveyed and other land now or formerly of the Grantor herein [said point of beginning being further described as being the following courses and distances from the point in Township Road No. 898 at its intersection with the southerly side of a 20 foot private road, (at which point the said private road runs along the northerly line of land owned now or formerly of Ronald I. Shaw and along the southerly line of land owned now or formerly by Regis A. Neiman) at the northwesterly corner of land owned now or formerly by Ronald I. Shaw: from said point in Township Road No. 898, along line of lands now or formerly of Ronald I. Shaw, Russel K. Loveridge and Stanley Krajick, et ux., North 65° 09' 56" East, 743.00 feet to a point; thence along line of land now or formerly of said Krajicks, South 50° 50' 04" East; 153.00 feet to a point; thence through lands now or formerly of the Grantor herein, North 89° 39' East, 98.77 feet to a pin, the place of beginning]; thence from said point of beginning, along line of land herein conveyed and line of other land now or formerly of the Grantor herein, North 74° 19' East, 208.71 feet to a pin; thence along same, South 15° 41' East, 208.71 feet to a pin; thence along same, South 74° 19' West, 208.71 feet to a pin; thence along same, North 15° 41' West, 208.71 feet to a pin, the place of beginning.

BEING Tax Map No. 61-06-00-0-148.

**PARCEL II:**

ALL that certain tract of land situate in the Township of Unity, County of Westmoreland, Commonwealth of Pennsylvania, being Lot 2 in the Paxton Plan recorded in the Office of the Recorder of Deeds of Westmoreland County, Pennsylvania, Plan Book Volume 91, page 1927, bounded and described as follows:

BEGINNING at a point in the center of Township Road 898 at the southwesterly corner of land now or formerly of Joseph S. Mancuso, Sr., et ux.; thence from said point of beginning along line of land now or formerly of said Joseph S. Mancuso, Sr., et ux., North 65° 13' 48" East, 354.00 feet to an existing iron pin; thence along same, North 48° 45' 00" East, 159.04 feet to an iron pin; thence along same and along line of land now or formerly of Stephen Tulenko, North 39° 22' 07" West, 455.82 feet to an existing concrete monument; thence along line of land now or formerly of Vincent A. Battaglia, et ux., North 39° 04' 46" East, 31.00 feet to an iron pin at the southwest corner of Lot 1 in said Paxton Plan; thence along the southwest line of Lot 1 in said Paxton Plan, South 80° 38' 28" East, 903.41 feet to an existing iron pin; thence along line of land now or formerly of Helen E. Lemmon, South 85° 53' 07" East, 669.66 feet to an iron pin; thence along line of land now or formerly of Glenn W. Ross, et ux., South 43° 04' 15" West, 238.73 feet to an iron pin; thence along same, South 39° 16' 38" East, 310.30 feet to an iron pin; thence along line of land now or formerly of Frank L. Stewart, Jr., et ux., South 49° 56' 56" West, 621.15 feet to an iron pin; thence along same, South 59° 11' 56" West, 251.84 feet to an iron pin; thence along same, North 32° 17' 15" West, 244.12 feet to an iron pin; thence along line of lands now or formerly of Richard L. Schall, et ux., Ronald Mileca, et ux. and Stanley Krofick, et ux., North 18° 01' 01" West, 521.00 feet to an iron pin; thence along line of land of said Stanley Krofick, et ux., North 49° 55' 03" West, 144.53 feet to an iron pin; thence along same and along lands now or formerly of Douglas A. Perratone and Ronald J. Shaw, et ux., South 65° 43' 59" West, 732.82 feet to a point in the center of said Township Road 898; thence through the center of said Township Road 898, North 8° 17' 45" West, 15.02 feet to a point, the place of beginning.

BEING Tax Map No. 61-06-00-0-066.

18-0647

Instr:201810110032533 10/11/2018
P:14 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC

2018095004

(h) permit the collection and application of miscellaneous proceeds as required by Section 10 of this Security Instrument;

(i) pay the fees required by Section 13 of this Security Instrument;

(j) continue to abide by the restrictions and take the actions required by Section 21 of this Security Instrument;

(k) pay any collection expenses under Section 22 of this Security Instrument; and

(l) pay interest at the rate payable from time to time under the Note.

"Survival Event" means any of the following:

(a) any default described in the Note;

(b) Lender requiring Borrower to pay immediately the full amount of Principal which has not been paid and all the interest that Borrower owes on that amount under the Note;

(c) Lender requiring immediate payment in full of all sums secured by this Security Instrument as described in the Note and Sections 17 and 22 of this Security Instrument;

(d) the Maturity Date as defined in the Note;

(e) the entry of any judgment against Borrower under the Note; and

(f) the entry of any judgment under this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

- BORROWER - Joshua Cane Jellison

Jessica Marie Jellison

- BORROWER - Jessica Marie Jellison

Instr:201810110032533 10/11/2018
P:15 of 15 F:$151.75 11:34AM
Tom Murphy T20180037744
Westmoreland County RecorderC

2018095004

[Space Below This Line For Acknowledgment]

STATE OF Pennsylvania

COUNTY OF Westmoreland

On this the 9th day of October, 2018, before me, Daniel Gehring, the undersigned officer, personally appeared **Joshua Cane Jellison and Jessica Marie Jellison, husband and wife**, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

Daniel Gehring
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Daniel Gehring, Notary Public
City of Greensburg, Westmoreland County
My Commission Expires Jan. 18, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

My Commission Expires: ____________

Individual Loan Originator: **JASON L MCCOY**, NMLSR ID: **1700607**
Loan Originator Organization: **WESTMORELAND HOME MORTGAGE, LLC**, NMLSR ID: **1698765**

CERTIFICATE OF RESIDENCE: I do certify that the precise address of the within named Mortgagee is 1901 E Voorhees Street, Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026.

Signature: ____________
Agent on behalf of Mortgagee

202006010015468
Electronic Recording 06/01/2020
Pages: 2 F: $104.25 10:43AM
Frank Schiefer T20200014977
Westmoreland County Recorder

I hereby CERTIFY that this document is recorded in the RECORDERS OFFICE of Westmoreland County Pennsylvania

Frank Schiefer • Recorder of Deeds

**Prepared By:**
**Dave LaRose/NTC, 2100 Alt. 19**
**North, Palm Harbor, FL 34683**
**(800)346-9152**

When Recorded Return To:
PHH Mortgage
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683

Tax Code/PIN#: 61-06-00-0-066, 61-06-00-0-148

## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR PLAZA HOME MORTGAGE INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)** by these presents does convey, grant, assign, transfer and set over the described Mortgage therein together with all interest secured thereby, all liens, and any rights due or to become due thereon to **PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407 (800)449-8767, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage dated 10/09/2018, in the amount of $277,874.00 made by **JOSHUA CANE JELLISON AND JESSICA MARIE JELLISON** to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR PLAZA HOME MORTGAGE INC., ITS SUCCESSORS AND ASSIGNS** recorded on 10/11/2018, in the Office of the Recorder of Deeds of WESTMORELAND County, in the State of **Pennsylvania**, in **Instrument # 201810110032533**.

Property is more commonly known as: 126 PAX VIEW HILLS DRIVE UNITY TOWNSHIP, LATROBE, PA 15650.

**Dated this 29th day of May in the year 2020**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR PLAZA HOME MORTGAGE INC., ITS SUCCESSORS AND ASSIGNS**

By: ______________________
**ALAN BAKER**
**VICE PRESIDENT**

UPI 61-06196-00000
MAP 61-06-00-0-066
UPI 61-06197-00000
MAP 61-06-00-0-148

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

PHH02 413152913 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
OCWEN-NVLER N1 MIN 100109820180950049 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026 DOCR
T292005-08:09:48 [C-2] EFRMPA1

*D0051310494*

EXHIBIT
tabbies
C

STATE OF FLORIDA COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 29th day of May in the year 2020, by Alan Baker as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR PLAZA HOME MORTGAGE INC., ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

**KARIN CHANDIAS**
**COMM EXPIRES: 07/28/2023**

KARIN CHANDIAS
Notary Public - State of Florida
Commission # GG 359792
My Comm. Expires Jul 28, 2023
Bonded through National Notary Assn.

Assignment of Mortgage from:
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE, AS NOMINEE FOR PLAZA HOME MORTGAGE INC., ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: 1901 E Voorhees St., Suite C, Danville, IL 61834)**
to:
**PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407 (800)449-8767, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

Mortgagor: **JOSHUA CANE JELLISON AND JESSICA MARIE JELLISON**

All that certain lot or piece of ground situated in
Mortgage Premise: 126 PAX VIEW HILLS DRIVE UNITY TOWNSHIP
LATROBE, PA 15650
WESTMORELAND
(Borough or Township, if stated), Commonwealth of Pennsylvania.
Being more particularly described in said Mortgage.

**Certificate of Residence**

I, **Alan Baker**, do certify that the precise address of the within named Assignee is:
**PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407 (800)449-8767, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)**

**ALAN BAKER**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

*413152913* PHH02 413152913 MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS) OCWEN-NVLER N1 MIN 1001098201809500049 MERS PHONE 1-888-679-6377 MERS Mailing Addresses: 1901 E Voorhees St., Suite C, Danville, IL 61834; P.O. Box 2026, Flint, MI 48501-2026 DOCR T292005-08:09:48 [C-2] EFRMPA1

*D0051310494*

PHH® MORTGAGE

PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel 877-744-2506
Fax 856-917-8300

05/03/2022

Account Number: 9010000850

JESSICA MARIE JELLISON
5142 ROUTE 30
C/O CHRISTOPHER P. SKATELL
GREENSBURG, PA 15601

Sent Via First-Class Mail®

Property Address:
126 PAX VIEW HILLS DR
LATROBE, PA 15650

EXHIBIT
D

PHH MORTGAGE

PHH Mortgage Services
1 Mortgage Way
Mt. Laurel, NJ 08054

Tel 877-744-2506
Fax 856-917-8300

# NOTICE OF INTENTION TO FORECLOSE MORTGAGE

Dear JESSICA MARIE JELLISON:

The MORTGAGE held by PHH MORTGAGE CORPORATION (hereinafter PHH Mortgage Services, we, us or ours) on your property located at 126 PAX VIEW HILLS DR LATROBE, PA 15650 IS IN SERIOUS DEFAULT because you have not made the monthly payment (s) and other charges for the months of 12/01/2020 through 05/03/2022 as follows:

| | | |
|---|---|---|
| Next Payment Due Date: | | 12/01/2020 |
| Total # of Monthly Payments Due: | | 18 |
| Total Monthly Payments Due: | | $38,852.98 |
| Late Charges: | | $450.40 |
| Other Charges: | Fees/Expenses: | $0.00 |
| | Uncollected NSF Fees: | $0.00 |
| | Unapplied Balance: | ($0.00) |
| **TOTAL YOU MUST PAY TO CURE DEFAULT:** | | **$39,303.38** |

The total amount now required to cure this default, or in other words, get caught up in your payments, as of the date of this letter, is $39,303.38.

You may cure this default by 06/07/2022, by paying to us the above amount of $39,303.38, plus any additional monthly payments and late charge which may fall due during this period.

If you do not cure the default by 06/07/2022, *we intend to exercise our right to accelerate the mortgage payments*. This means that whatever is owing on the original amount borrowed will be considered due immediately and you may lose the chance to pay off the original mortgage in monthly installments. If full payment of the amount of default is not made by 06/07/2022, *we also intend to instruct our attorneys to start a lawsuit to foreclose your mortgaged property. If the mortgage is foreclosed your mortgaged property will be sold by the Sheriff to pay off the mortgage debt.* If we refer your case to our attorneys, but you cure the default before they begin legal proceedings against you, you will still have to pay the reasonable attorney's fees, actually incurred, *as allowed under 68 Pa.C.S.A §2311.* However, if legal proceedings are started against you, you will have to pay the reasonable attorney's fees *as allowed under 68 Pa.C.S.A §2311.* Any attorney's fees will be added to whatever you owe us, which may also include our reasonable costs. *If you cure the default within the thirty day period, you will not be required to pay attorney's fees.*

We may also sue you personally for the unpaid principal balance and all other sums due under the mortgage. If you have not cured the default within the thirty day period and foreclosure proceedings have begun, *you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's foreclosure sale. You may do so by paying the total amount of the unpaid monthly payments plus any late or other charges then due, as well as the reasonable attorney's fees and costs connected with the foreclosure sale (and perform any other requirements under the mortgage).* It is estimated that the earliest date that such a Sheriff's sale could be held would be **approximately six (6) month from the date of this notice.** A notice of the date of the Sheriff sale will be sent to you

PHH MORTGAGE

Respond to this offer no later than:
05/23/2022

05/05/2022

JOSHUA CANE JELLISON
JESSICA MARIE JELLISON
C/O CHRISTOPHER P. SKATELL 5142 ROUTE 30
GREENSBURG, PA 15601

**Account Information**

**Account Number: 9010000850**

**Property Address:**
126 PAX VIEW HILLS DR
LATROBE, PA 15650

We are here to help!

Relationship Manager:
LiLiana Villamizar
RMA@mortgagefamily.com
Online:
www.mortgagequestions.com

0-814-BVS76-0000012-001-02-000-001-000-000

## MORTGAGE ELIGIBLE FOR FHA COVID-19 RECOVERY STANDALONE PARTIAL CLAIM

### PLEASE READ CAREFULLY

Dear Accountholder(s):

**Congratulations!** This mortgage is eligible for the Federal Housing Administration ("FHA") COVID-19 Recovery Standalone Partial Claim ("FHA COVID-19 Partial Claim"). If the requirements outlined in this notice are followed, this account will be reinstated to performing status

The enclosed documentation provides proposed terms as well as additional information for this FHA COVID-19 Partial Claim. To accept, complete all requirement(s) listed below by respective due date(s).

**How to Accept this FHA COVID-19 Partial Claim:**

- **Sign and return all enclosed agreements by 05/23/2022**
  - Enclosed are two (2) copies of the following agreements: Promissory Note and Partial Claim Mortgage (collectively, "Agreements"). The Agreements should be signed and notarized, and all pages should be returned to us in the enclosed prepaid envelope by 05/23/2022.
  - This offer will be withdrawn if the Agreements are not received by 05/23/2022 .

- **Make mortgage payment of $2,179.46 by 06/01/2022**
  - Resume making monthly mortgage payments of **$2,179.46** beginning on the 06/01/2022.

**Please note:**

EXHIBIT
E

9010000850 OCW

This communication is from a debt collector attempting to collect a debt; any information obtaine purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy purely provided to you for informational purposes only with regard to our secured lien on the above is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.



NMLS # 2726

PHH
MORTGAGE

1. Upon completion of the offer, all late charges, NSF and convenience fee(s) will be waived and certain other costs such as legal fees will be capitalized. As required by the investor, there may be fees and costs that cannot be capitalized or waived; therefore, these amounts will remain outstanding on the account after the offer is completed
2. The Agreements should be carefully read and executed as requested below:
   - Borrower Acknowledgement(s): Each Agreement is succeeded by associated Borrower Acknowledgement signature page(s) and notary provision page(s) ("Signature Pages"):
     i. Signatures: Signature Pages must be signed, and the signatures must exactly match the names that are printed, as well as the names on the recorded deed for the property,
     ii. Notarization: Signature pages must be signed in the presence of a notary and other witnesses.
     iii. Please refer to Agreement Checklist for detailed instructions.
3. If there is a delay in processing, please continue to make monthly mortgage payment of $2,179.46 until the Partial Claim is completed
4. Final approval is subject to the receipt of:
   - properly signed and notarized Borrower Acknowledgement pages for Promissory Note and Partial Claim Mortgage with any attachments
5. We suggest that copies of all original Agreements should be made and kept for recordkeeping purposes.
6. By signing the Agreements, accountholder(s) confirm that they are able to resume making monthly mortgage payments

**The following documents are enclosed. Please read all documents carefully in their entirety:**

- Summary of the Offer
- Frequently Asked Questions
- Opportunity for Appeal
- Additional Assistance is Available
- Legal Disclosures
- Payment Remittance Information
- Agreement Checklist
- Promissory Note*
- Partial Claim Mortgage*

*This Agreement includes Borrower Acknowledgement signature page(s) and notary provision page(s) that must be properly signed and notarized. Please refer to enclosed Agreement Checklist for detailed instructions.

We are here to help! LiLiana Villamizar has been assigned as Relationship Manager and will be designated representative for resolution, inquiries and submission of documents.

**For any questions**, we can be reached Monday through Friday 8:00am to 9:00pm ET at 800-750-2518, to speak with the assigned Relationship Manager, LiLiana Villamizar. If LiLiana Villamizar is not available, another dedicated member of our Home Retention Team will be available to answer any questions.

Our Customer Care Center is also available, toll-free at 800-449-8767, Monday through Friday 8:00 am to 9:00 pm, Saturday 8:00 am to 5:00 pm ET to answer any inquiries.

Sincerely,

Loan Servicing

0-814-BVS76-0000012-001-03-000-001-000-000



This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

PHH MORTGAGE

## SUMMARY OF THE OFFER

**This account is eligible for FHA COVID-19 Stand Alone Partial Claim**

- This offer consists of Partial Claim - FHA will purchase a portion of the existing indebtedness and secure it as a junior lien ("Partial Claim"), which does not accrue interest or require monthly payments,

**Benefits of FHA COVID-19 Stand Alone Partial Claim:**

- This offer aims to increase likelihood of lasting homeownership by fully reinstating the account
- Eligible Borrowers may receive more than one COVID-19 Recovery Standalone Partial Claim.

**Summary of the Offer Terms:**

- **PARTIAL CLAIM summary:**

| | Partial Claim |
|---|---|
| Lien Position | Junior Lien |
| New Principal Balance | $37,128.97 |

*Partial Claim does not accrue interest or require monthly payments.

**Escrow amount may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance premium(s) and/or other escrow expenses. Therefore, monthly Modified Mortgage Payment may change accordingly. We will provide notification of any future adjustments to the monthly payment.

0-814-BVS76-0000012-001-04-000-001-000-000



This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is purely provided to you for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

May 20, 2022

PHH MORTGAGE SERVICES
ATTN: MODIFICATIONS PROCESSING
5720 PREMIER PARK DRIVE
WEST PALM BEACH, FL 33407

FEDEX OVERNIGHT

RE: Joshua Cane Jellison
Jessica Marie Jellison
FHA Covid-19 Recovery Standalone Partial Claim
Account Number: 9010000850
FHA Case Number: 442-4633063

To Whom it May Concern:

As you know, I represent Joshua and Jessica Jellison in the above referenced matter. Pursuant to your offer, enclosed herewith are the two (2) executed and notarized copies of the Promissory Note and two (2) executed and notarized copies of the Partial Claim Mortgage. It is my understanding that this will not cure the default on this account, and that their next payment due will be their June 1st monthly payment in the amount of $2,179.46. Please note that this payment is being mailed, regular mail, to the Pittsburgh, PA address that your staff provided to my office by phone on this date.

Thank you for your prompt attention to this matter. If you have any questions, please do not hesitate to contact me.

Sincerely,

Christopher P. Skatell, Esquire

Enclosures: 2 originals each of Promissory Note and Partial Claim Mortgage
CPS/mjk

EXHIBIT
F

FHA Case No. 442-4633063

# PROMISSORY NOTE

05/05/2022

Property Address: 126 PAX VIEW HILLS DR

LATROBE, PA 15650

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and/or assigns.

## 2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of U.S. $37,128.97, to the order of Lender.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

On 11/01/2048, or if earlier, when the first of the following events occur:

(i) Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the primary Note has been accelerated, or

(iii) The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary.

(B) Place

Payment shall be made at the Office of the Housing FHA-Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 Seventh Street, SW, Washington, DC 20410 or any such other place as Lender may designate in writing by notice to Borrower.

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**Notice Regarding Bankruptcy:** If this account has been previously included in a discharged Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, this Note is not intended to create a new debt obligation, restore or reconstitute any previously-discharged debt obligation, re-establish any personal liability for the underlying debt, or effectuate a reaffirmation of any discharged debt obligation for the accountholder(s) or any other individual(s).

By signing the Borrower Acknowledgement page below, Borrower accepts and agrees to the terms and covenants contained in this Note.

0-814-BVS76-0000012-001-15-000-001-000-000

# BORROWER ACKNOWLEDGEMENT – PROMISSORY NOTE

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

All signatures must exactly match the names that are printed in the Agreement, as well as the names on the recorded deed for the property.

5-20-22
Date

JOSHUA CANE JELLISON

5-20-22
Date

JESSICA MARIE JELLISON

0-814-BVS76-0000012-001-16-000-001-000-000

State of Pennsylvania

County of Westmoreland

On this 20 day of May , 22 , before me, the undersigned, a Notary Public in and for said county and state, personally appeared Joshua Cane Jellison and Jessica Marie Jellison personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public

My Commission Expires: 2-22-2023

Commonwealth of Pennsylvania - Notary Seal
RAFAEL C HERNANDEZ - Notary Public
Westmoreland County
My Commission Expires Feb 22, 2023
Commission Number 1345813

0-814-BVS76-0000012-001-17-000-001-000-000

Recording Requested By:
PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

Loan Number: 9010000850 FHA Case No. 442-4633063

--------------- {Space above this line for recording data} ---------------

# PARTIAL CLAIM MORTGAGE

This Subordinate Mortgage ("Security Instrument") is given on 05/05/2022. The Mortgagor is JOSHUA CANE JELLISON, JESSICA MARIE JELLISON whose address is 126 PAX VIEW HILLS DR, LATROBE, PA 15650 ("Borrower"). This Security is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of U.S. $37,128.97. This debt is evidenced by Borrower's note dated the same date as this Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on 11/01/2048. This Security Instrument secures Lender: (a) the repayment of all the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale the following described property located in Westmoreland County, PA:

The real property described being set forth as follows:

**(Legal Description – Attached as Exhibit if Recording Agreement)**

Which has the address of 126 PAX VIEW HILLS DR, LATROBE, PA 15650 ("Property Address");

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower convents that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

This security instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal. Borrower shall pay when due the principal of the debt evidenced by the Note.

0-814-BVS76-0000012-001-18-000-001-000-000

2. Borrower Not Released: Forbearance By Lender Not a Waiver. Extension of the time of payment of the sum secured by this Security Instrument granted by Lender to any successor in the interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in the interest. Lender shall not be required to commence proceedings against any successors in the interest or refuse to extend time for payment of otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in the interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. Successors and Assigns Bound; Joint and Several Liability: Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note; (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sum secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument of the Note without that Borrower's consent.

4. Notices. Any notices to Borrower provided for in this Security Instrument shall be given by delivering it by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 20410 or any address Lender designates by notice to Borrower or Lender when given as provided in this paragraph.

5. Governing Law: Severability. This Security Instrument shall be governed by Federal Law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7. Acceleration: Remedies.
If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under the Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

By signing the Borrower Acknowledgement page below, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

0-814-BVS76-0000012-001-19-000-001-000-000

# BORROWER ACKNOWLEDGEMENT – PARTIAL CLAIM MORTGAGE

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

All signatures must exactly match the names that are printed in the Agreement, as well as the names on the recorded deed for the property.

5-20-22
Date

JOSHUA CANE JELLISON

5-20-22
Date

Jessica Marie Jellison
JESSICA MARIE JELLISON

0-814-BVS76-0000012-001-20-000-001-000-000

State of Pennsylvania

County of Westmoreland

On this 20 day of May, 2022, before me, the undersigned, a Notary Public in and for said county and state, personally appeared Joshua Cane Jellison and Jessica marie Jellison personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public

My Commission Expires: 2.22.2023

Commonwealth of Pennsylvania - Notary Seal
RAFAEL C HERNANDEZ - Notary Public
Westmoreland County
My Commission Expires Feb 22, 2023
Commission Number 1345813

0-814-RVS76-0000012-001-21-000-001-000-000

FHA Case No. 442-4633063

# PROMISSORY NOTE

05/05/2022

Property Address: 126 PAX VIEW HILLS DR

LATROBE, PA 15650

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Secretary" or "Lender" means the Secretary of Housing and Urban Development and its successors and/or assigns.

## 2. BORROWER'S PROMISE TO PAY

In return for a loan received from Lender, Borrower promises to pay the principal sum of U.S. $37,128.97, to the order of Lender.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses, which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A) Time

On 11/01/2048, or if earlier, when the first of the following events occur:

(i) Borrower has paid in full all amounts due under the primary Note and related mortgage, deed of trust or similar Security Instruments insured by the Secretary, or

(ii) The maturity date of the primary Note has been accelerated, or

(iii) The primary Note and related mortgage, deed of trust or similar Security Instrument are no longer insured by the Secretary.

(B) Place

Payment shall be made at the Office of the Housing FHA-Comptroller, Director of Mortgage Insurance Accounting and Servicing, 451 Seventh Street, SW, Washington, DC 20410 or any such other place as Lender may designate in writing by notice to Borrower.

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 7. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

**Notice Regarding Bankruptcy:** If this account has been previously included in a discharged Chapter 7 bankruptcy, and there having been no valid reaffirmation of the underlying debt, this Note is not intended to create a new debt obligation, restore or reconstitute any previously-discharged debt obligation, re-establish any personal liability for the underlying debt, or effectuate a reaffirmation of any discharged debt obligation for the accountholder(s) or any other individual(s).

By signing the Borrower Acknowledgement page below, Borrower accepts and agrees to the terms and covenants contained in this Note.

0-814-BVS76-0000012-001-22-000-001-000-000

# BORROWER ACKNOWLEDGEMENT – PROMISSORY NOTE

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

All signatures must exactly match the names that are printed in the Agreement, as well as the names on the recorded deed for the property.

5-20-22
Date

JOSHUA CANE JELLISON

5-20-22
Date

JESSICA MARIE JELLISON

0-814-BVS76-0000012-001-23-000-001-000-000

State of Pennsylvania

County of Westmoreland

On this 20 day of May, 2022, before me, the undersigned, a Notary Public in and for said county and state, personally appeared Joshua Conn Jellison and Jessica Marie Jellison personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public

My Commission Expires: 2.22.2023

Commonwealth of Pennsylvania - Notary Seal
RAFAEL C HERNANDEZ - Notary Public
Westmoreland County
My Commission Expires Feb 22, 2023
Commission Number 1345813

0-814-BVS76-0000012-001-24-000-001-000-000

Recording Requested By:
PHH Mortgage Corporation

**After Recording Return To:**
PHH Mortgage Corporation
Attention: Modification Processing
PO Box 24737
West Palm Beach, FL 33416-9838

Loan Number: 9010000850

FHA Case No. 442-4633063

--------------- {Space above this line for recording data} ---------------

# PARTIAL CLAIM MORTGAGE

This Subordinate Mortgage ("Security Instrument") is given on 05/05/2022. The Mortgagor is JOSHUA CANE JELLISON, JESSICA MARIE JELLISON whose address is 126 PAX VIEW HILLS DR, LATROBE, PA 15650 ("Borrower"). This Security is given to the Secretary of Housing and Urban Development, whose address is 451 Seventh Street, SW, Washington, DC 20410 ("Lender"). Borrower owes Lender the principal sum of U.S. $37,128.97. This debt is evidenced by Borrower's note dated the same date as this Instrument ("Note"), which provides for the full debt, if not paid earlier, due and payable on 11/01/2048. This Security Instrument secures Lender: (a) the repayment of all the debt evidenced by the Note, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums advanced under Paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, warrant, grant and convey to the Lender, with power of sale the following described property located in Westmoreland County, PA:

The real property described being set forth as follows:

**(Legal Description – Attached as Exhibit if Recording Agreement)**

Which has the address of 126 PAX VIEW HILLS DR, LATROBE, PA 15650 ("Property Address");

Together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Borrower convents that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

This security instrument combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant agree as follows:

UNIFORM COVENANTS.

1. Payment of Principal. Borrower shall pay when due the principal of the debt evidenced by the Note.

n-814-BVS76-0000012-001-25-000-001-000-000

2. Borrower Not Released: Forbearance By Lender Not a Waiver. Extension of the time of payment of the sum secured by this Security Instrument granted by Lender to any successor in the interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in the interest. Lender shall not be required to commence proceedings against any successors in the interest or refuse to extend time for payment of otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in the interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

3. Successors and Assigns Bound; Joint and Several Liability: Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note; (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sum secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the term of this Security Instrument of the Note without that Borrower's consent.

4. Notices. Any notices to Borrower provided for in this Security Instrument shall be given by delivering it by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to: Department of Housing and Urban Development, Attention: Single Family Notes Branch, 451 Seventh Street, SW, Washington, DC 20410 or any address Lender designates by notice to Borrower or Lender when given as provided in this paragraph.

5. Governing Law: Severability. This Security Instrument shall be governed by Federal Law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

6. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

7. Acceleration: Remedies.
If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under the Paragraph 4 of the Subordinate Note, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph or applicable law.

By signing the Borrower Acknowledgement page below, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

0-814-BVS76-0000012-001-26-000-001-000-000

# BORROWER ACKNOWLEDGEMENT – PARTIAL CLAIM MORTGAGE

**IMPORTANT – Do NOT sign this Agreement unless you are in the presence of a notary. If extenuating circumstances prevent one notary signature, separately signed and notarized agreements will be accepted; however, the agreements must be returned in the same package to PHH Mortgage Corporation.**

Each of the Borrower(s) and the Lender acknowledge that no representations, agreements or promises were made by the other party or any of its representatives other than those representations, agreements or promises specifically contained herein. This Agreement, and the Note and Security Instrument (as amended hereby) set forth the entire understanding between the parties. There are no unwritten agreements between the parties.

All individuals on the mortgage, note and the property title must sign this Agreement.

All signatures must exactly match the names that are printed in the Agreement, as well as the names on the recorded deed for the property.

5-20-22
Date

JOSHUA CANE JELLISON

5-20-22
Date

JESSICA MARIE JELLISON

0-814-BVS76-0000012-001-27-000-001-000-000

State of Pennsylvania
County of Westmoreland

On this 20 day of May, 2022, before me, the undersigned, a Notary Public in and for said county and state, personally appeared Joshua Carl Ellison and Jessica Marie Ellison personally known to me or identified to my satisfaction to be the person(s) who executed the within instrument, and they duly acknowledged that said instrument is their act and deed, and that they, being authorized to do so, executed and delivered said instrument for the purposes therein contained.

Witness my hand and official seal.

Notary Public

My Commission Expires: 2.22.2023

Commonwealth of Pennsylvania - Notary Seal
RAFAEL C HERNANDEZ - Notary Public
Westmoreland County
My Commission Expires Feb 22, 2023
Commission Number 1345813

0-814-BVS76-0000012-001-28-000-001-000-000

https://www.fedex.com/en-
FedEx il)

# Ship, manage, track, deliver

RATE & SHIP | TRACK | LOCATIONS

TRACKING ID

273366071006

TRACK

MULTIPLE TRACKING NUMBERS |

NEED HELP? (HTTPS://WWW.FEDEX.COM/EN-US/QUICK-HELP/TRACKING/F_QUICKHELP.HTML)

273366071006

ADD NICKNAME

Delivered
Monday, 05/23/2022 at 8:52 am

FedEx Office.

Address: 5109 STATE ROUTE 30
GREENSBURG
PA 15601
Location: CVAK
Device ID: -BTC02
Transaction: 940335977161

---

FedEx Priority Overnight
Tracking Number:
273366071006 0.30 lb (S) 48.95
Declared Value 100
Recipient Address:
Attn: Modifications Processing
PHH Mortgage Services
5720 PREMIER PARK DR
WEST PALM BEACH, FL 33407-1610
8004498767

Scheduled Delivery Date 05/23/2022

Pricing option:
STANDARD RATE

Package Information:
FedEx Envelope

Shipment subtotal: $48.95

Total Due: $48.95

tabbies
EXHIBIT
6

**DELIVERED**

Signed for by: L.HAYDEN

**GET STATUS UPDATES**

**OBTAIN PROOF OF DELIVERY**

| FROM | TO |
|---|---|
| GREENSBURG, PA US | WEST PALM BEACH, FL US |

**MANAGE DELIVERY**

**SEE FULL DETAILS**



## Personalize Your Deliveries

Need to customize this delivery?
Learn how FedEx Delivery Manager® can help ensure your deliveries meet your schedule - not the other way.

**GET STARTED (HTTPS://WWW.FEDEX.COM/APPS**

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

May 20, 2022

PHH MORTGAGE SERVICES
P.O. Box 371458
Pittsburgh, PA 15250-7458

USPS REGULAR MAIL

RE: Joshua Cane Jellison
Jessica Marie Jellison
FHA Covid-19 Recovery Standalone Partial Claim
Account Number: 9010000850
FHA Case Number: 442-4633063

To Whom it May Concern:

As you know, I represent Joshua and Jessica Jellison in the above referenced matter. Also as you know, my clients have entered into the FHA Covid-19 Recovery Standalone Partial Claim Mortgage. For informational purposes, the required Promissory Note and Partial Claim Mortgage papers were signed and notarized and overnighted to Modification Processing at the West Palm Beach address on this date. As such, my clients have been directed to resume making monthly mortgage payments, with the first being due June 1, 2022 in the amount of $2,179.46. Accordingly, enclosed is a check for this June 1st payment.

Thank you for your time and attention to this matter. If you have any questions, please do not hesitate to contact me.

Sincerely,

Christopher P. Skatell, Esquire

Enclosure: $2,179.46
CPS/mjk

EXHIBIT
H

JOSHUA C. JELLISON
JESSICA M. JELLISON
126 PAX VIEW HILLS DR.
LATROBE, PA 15650-3509

718
8-9/430
196

June 1, 2022
Date

Pay to the Order of PHH Mortage Services $ 2179.46

two thousand one hundred seventy nine 46/100 Dollars

Photo Safe Deposit® Details on back

PNCBANK
PNC Bank, N.A. 001

For JUNE 1ST PAYMENT ACCOUNT NO. 9010000850

Jessica Jellison

⑆043000096⑆ 1034977412⑈ 0718

Harland Clarke

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

June 17, 2022

PHH MORTGAGE SERVICES
ATTN: MODIFICATIONS PROCESSING
5720 PREMIER PARK DRIVE
WEST PALM BEACH, FL 33407

FEDEX OVERNIGHT

RE: Joshua Cane Jellison
Jessica Marie Jellison
FHA Covid-19 Recovery Standalone Partial Claim
Account Number: 9010000850
FHA Case Number: 442-4633063

To Whom it May Concern:

As you know, I represent Joshua Cane Jellison and Jessica Marie Jellison in regard to the above reference matter. Also as you know, we previously submitted signed and notarized Promissory Note and Partial Claim Mortgage. However, after indicating in a phone call with my office that you received the same and everything was processed, you then informed my office via phone call on June 14, 2022 that the Partial Claim Mortgage was denied due to what you deemed as a defective notarization. More specifically, you did not like the notary's handwriting with respect to Jessica's middle name on one of the pages. As such, you emailed a new packet to my office and directed us to have our clients re-execute the documents with a new notarization.

Pursuant to your direction, enclosed herewith is a freshly executed and notarized set of documents, consisting of two Promissory Notes and two Partial Claim Mortgages. As you instructed, I am mailing these via Fedex so that you get them at the beginning of next week.

I trust that these newly executed documents will satisfy your requirements, and that this will now place my clients' account in good standing. Please contact me if you have any questions. Thank you for your prompt attention to this matter.

Sincerely,

Christopher P. Skatell, Esquire

Enclosures: 2 originals each of Promissory Note and Partial Claim Mortgage
CPS/mjk

EXHIBIT
I

(https://www.fedex.com/en-us/home.html)

FedEx® Tracking

**DELIVERED**

# Monday

6/20/2022 at 9:02 am

Signed for by: L.HAYDEN

No signature required

Obtain Proof of delivery

How was your delivery?

☆ ☆ ☆ ☆ ☆

**DELIVERY STATUS**

Delivered

Get Status Updates

**TRACKING ID**

274459785524

**FROM**

GREENSBURG, PA US

*Label Created*

6/17/2022 09:48

**PACKAGE RECEIVED BY FEDEX**

HUNKER, PA

6/17/2022 17:24

**IN TRANSIT**

RIVIERA BEACH, FL

6/20/2022 06:46

**OUT FOR DELIVERY**

RIVIERA BEACH, FL

6/20/2022 08:26

**DELIVERED**

West Palm Beach, FL US

*DELIVERED*

6/20/2022 at 9:02 AM

View travel history

FedEx Office.

| | |
|---|---|
| Address: | 5109 STATE ROUTE 30<br>GREENSBURG<br>PA 15601 |
| Location: | CVAK |
| Device ID: | -BTC01 |
| Transaction: | 940338260836 |

FedEx Priority Overnight
Tracking Number:
274459785524 0.25 lb (S) 48.36
Declared Value 100
Recipient Address:
Attn: Modifications Processing
PHH Mortage Services
5720 Premier Park Dr
West Palm Beach, FL 33407
0000000000

Scheduled Delivery Date 06/20/2022

Pricing option:
STANDARD RATE

Package Information:
FedEx Envelope

Shipment subtotal: $48.36

Total Due: $48.36

EXHIBIT J

Manage Delivery

PHH MORTGAGE

PHH Mortgage Services
P.O. Box 5452
Mt. Laurel, NJ 08054-5452

# Off-Scheduled Escrow Statement

**June 27, 2022**

Loan number: **9010000850**

**Questions?**

**Visit us at**
**www.MortgageQuestions.com**
**Call toll free** 1-877-744-2506
**Fax** 1-856-917-8300

0000029 02 SP 0.730 **SNGLP T1 1 3725 15601-765799 -C02-P00029-I OC NK

JOSHUA CANE JELLISON
JESSICA MARIE JELLISON
C/O CHRISTOPHER P. SKATELL
5142 ROUTE 30
GREENSBURG, PA 15601

011727

### Why am I getting this statement?

In accordance with federal guidelines your escrow account is reviewed at least one time per year; however, certain circumstances may require an additional review. This statement is a result of that review known as an escrow analysis statement, which determines if sufficient funds are available to pay your taxes and/or insurance. This statement is a projection of your escrow account and may also include a history of the escrow activity on your loan since the time you last received an escrow analysis statement.

### What does this mean to me?

Because your escrow account is projected to have more money than is needed, there is a surplus of **$1,314.54;** however, this surplus is being retained due to the delinquent status of your mortgage. Once your loan returns to a current status, please contact our Customer Service Department at the above referenced number to determine if the surplus is still valid.

### What is a surplus?

A surplus is the difference between the **anticipated** escrow balance, which is greater than the **required** escrow balance at the beginning of the analysis cycle. A surplus typically results from changes in taxes and/or insurance. Please refer to the enclosed FAQ for additional information.

| | |
|---|---|
| **Anticipated** escrow account balance (as of July 31, 2022): | $4,784.81 |
| **Required** escrow account balance (as of July 31, 2022 ): | $3,470.27 |
| **Difference resulting in an escrow account surplus:** | **$1,314.54** |

### What is my new monthly payment?

**Effective August 2022, your new monthly mortgage payment will be: $2,040.19**

| | Current Payment | New Payment |
|---|---|---|
| Principal & Interest | $1,407.95 | $1,407.95 |
| Escrow Deposit | $771.51 | $632.24 |
| **Total Payment** | **$2,179.46** | **$2,040.19** |

***If your payment is issued by a third party, or if you make payments through a bill pay service, then please make sure your new total monthly payment amount is updated with your service provider.***

See reverse ➔

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

EXHIBIT K

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

July 8, 2022

PHH MORTGAGE SERVICES
P.O. Box 5452
Mt. Laurel, NJ 08054-5452

USPS REGULAR MAIL

RE: Joshua Cane Jellison
Jessica Marie Jellison
Account Number: 9010000850
FHA Case Number: 442-4633063

To Whom it May Concern:

As you know, I represent Joshua Cane Jellison and Jessica Marie Jellison in regard to the above reference account. As such, I am in receipt of your "Off-Scheduled Escrow Statement" dated June 27, 2022, in which you notify my clients of a surplus of $1,314.54. Pursuant to said Statement, you state that you are retaining this overage due to an alleged delinquent status of the Mortgage. Please take this as my clients' FORMAL NOTICE of appeal to your decision to retain the Escrow Overage.

As you should be aware, my clients entered into an FHA Covid-19 Recovery Standalone Partial Claim Mortgage, which PHH Mortgage improperly denied for reasons that are currently being contested. As such, there is currently an appeal pending as a result of the same. Accordingly, my clients are not in agreement with PHH Mortgage holding the escrow shortage and respectfully demand that the overage be returned to them immediately. Thank you for your prompt attention to this matter.

Sincerely,

Christopher P. Skatell, Esquire

CPS/mjk

EXHIBIT L

PHH®
MORTGAGE

P O BOX 5954, SPRINGFIELD, OH 45501-5954

Date: June 1, 2022

Tel: 1-888-882-1855
Fax: 1-937-525-4210

JOSHUA CANE JELLISON
JESSICA MARIE JELLISON
C/O CHRISTOPHER P. SKATELL
5142 ROUTE 30
GREENSBURG, PA 15601

Account Number: 9010000850
Policy Number: MLR2114070063
Property Address: 126 PAX VIEW HILLS DR
LATROBE, PA 15650

Subject: **Please update insurance information for**
126 PAX VIEW HILLS DR
LATROBE, PA 15650

ATTENTION: HAZARD INSURANCE IS SET TO RENEW - PLEASE PROVIDE UPDATED EVIDENCE OF INSURANCE

Dear Customer,

**Why Are We Sending This Letter?**

We did not have evidence that the property listed above (the "Property") had hazard insurance. Accordingly, we previously bought insurance for the Property and assessed the cost to the mortgage account.

**The policy that we bought is scheduled to expire. Because hazard insurance is required on the Property, we intend to maintain insurance on the Property by renewing or replacing the insurance we bought.** To avoid a subsequent purchase of new insurance, we request that you provide us with the updated hazard insurance information for the property.

The insurance we buy:

- **Will cost an estimated $2,014.00 annually, which may be significantly more expensive than insurance you can buy yourself.**
- **May not provide as much coverage as an insurance policy you buy yourself.**

**What Needs To Be Done?**

**If you buy hazard insurance, you should immediately provide us with your insurance information in writing for the property address referenced above.** All you need to do is ask your insurance agent to include the mortgage account number and property address above on a copy of your new/renewal policy or notice of reinstatement and fax it with a Mortgagee Clause/Lender's Loss Payable Endorsement as soon as possible to: 1-937-525-4210. You/your agent can also mail the documents to:

PHH MORTGAGE SERVICES
ITS SUCCESSORS AND/OR ASSIGNS
AS THEIR INTEREST MAY APPEAR
P O BOX 5954
SPRINGFIELD, OH 45501-5954
Loan Number: 9010000850

Alternatively, you may update the Property's hazard insurance coverage information online at www.MyCoverageInfo.com/mortgagefamily or via email to MortgageFamily@MyCoverageinfo.com.

If you have any questions, please contact us at 1-888-882-1855. Please review the additional important information contained on the following pages of this notice.

EXHIBIT
M

The following information is being provided as a supplement to the Notice on page 1 of this document; it includes important information about the insurance on your mortgaged property.

PURCHASING YOUR OWN INSURANCE:

- **You have the right to independently purchase acceptable insurance from the insurance agent or company of your choice and we urge you to do so.** Acceptable insurance is insurance that is equal to 100% of the estimated replacement cost to rebuild your home and other improvements on the property. If the account was previously non-escrowed for insurance and you would like the account to go back to non-escrow, please contact customer care and they can assist with de-escrowing the account.

ESCROWING FOR INSURANCE:

- If you have elected to pay your insurance directly, rather than having it paid through an escrow account, and if you are currently unable to pay your hazard insurance premium, please call us as soon as possible and ask us to set up an escrow account and advance the insurance premium for the Property. If you choose this option, the insurance advance would be repaid as an additional component in future monthly payments. We will need the contact information for your insurance agent or company as well as the amount of the premium currently due. Insurance companies allow a very short time to reinstate policies that have expired and it is important that you call us immediately if you need our assistance. We cannot pay your hazard insurance premium without your cooperation.

- If you do not elect to establish an escrow account pursuant to the above paragraph for the continuation of your insurance policy, we will establish one in conjunction with the insurance we obtain, and that escrow account will be charged for the premiums that we pay. **As a result, the monthly mortgage payments will be increased to include the cost of this policy.**

- If we purchase this insurance, your escrow account will be charged for the premiums that we pay. **Please be advised that the monthly mortgage payments will be increased to include the cost of this policy.**

THE INSURANCE WE OBTAIN:

- The insurance we obtain will remain in effect until you provide us with evidence of acceptable coverage, at which time the policy we obtained will be cancelled, and you will receive a refund of any unearned premium.

  Even if you obtain coverage that is acceptable to us, please be aware that if there is a gap between the cancellation of your insurance and the effective date of your new coverage, you will be charged for the coverage that we purchased to cover that gap period.

- **The cost of the insurance we obtain is likely to be much higher than the cost of coverage you could obtain on your own.** This is because the insurance we purchase is issued automatically without evaluating the risk of insuring your property.

- The maximum amount of coverage for a lender placed policy is $5,000,000.00. For properties located in New York, the lender placed hazard insurance coverage amount will be placed at the lesser of: the coverage amount of the last known preferred policy coverage amount known or the unpaid principal balance; not to exceed the replacement cost value. If there is no last known coverage amount available, the replacement cost value will be obtained.

  For all other properties, the lender placed hazard insurance coverage amount will be placed equal to the coverage amount of the last known preferred policy. If there is no last known preferred policy available, the unpaid principal balance or total credit limit can be used.

- Please be advised that lender-placed carrier providing the coverage referenced above may be staffing our customer service telephone lines.

We appreciate the opportunity to serve you and look forward to meeting your mortgage needs. We hope you will agree that obtaining your own insurance is in your best interest.

If you have any questions call us at 1-888-882-1855, Monday through Friday between 8:00 AM and 9:00 PM EST, and on Saturday between 8:00 AM and 5:00 PM EST, and our customer service representatives will be happy to help you.

Sincerely,

Insurance Department

**IMPORTANT MESSAGE**

Please note that the coverage under the Lender Placed Policy referenced in this letter will be cancelled as of the payoff date of your loan. If you retain ownership in the property after payoff, we strongly advise you to obtain your own insurance policy to avoid any lapse in coverage as a result of this cancellation.

Any applicable refund will be deposited into your escrow account and the net proceeds will be sent to the last mailing address on record.

This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

June 15, 2022

PHH MORTGAGE SERVICES
P.O. Box 5954
Springfield, OH 45501-5954

VIA FACSIMILE ONLY

RE: Joshua Cane Jellison
Jessica Marie Jellison
Property address: 126 Pax View Hills Dr., Latrobe, PA 15650
Account Number: 9010000850
Policy Number: MLR2114070063

To Whom it May Concern:

As you know, my office represents Joshua Cane Jellison and Jessica Marie Jellison with respect to the above identified account. As such, I am in receipt of your correspondence of June 1, 2022 in which you advised that you plan to purchase hazzard insurance on the property on behalf of the Jellisons. Please be advised that my clients **do** in fact have a valid insurance policy, and you **do not** need to purchase insurance on their behalf. Enclosed is proof of current and valid insurance.

My office tried to email you this proof of insurance on two occasions, but both times we received a completely blank email reply from you. As such, please confirm that you received this fax, either by phone call to my office or by letter to my office at the fax number listed above. Please also confirm that you have updated their records and that you will not be purchasing insurance on their behalf. Thank you for your prompt attention to this matter.

Sincerely,

Christopher P. Skatell, Esquire

Enclosure: proof of home owner's insurance
CPS/mjk

EXHIBIT
N

Erie Insurance

Member Company
Erie Insurance Company

100 Erie Insurance Place • Erie, PA 16530
814.870.2000 • erieinsurance.com

# EricSecure Home® Insurance - PA

**Agent's Information**
RIDGE INSURANCE AGENCY INC
AA5592
20550 ROUTE 19
CRANBERRY TWP, PA 16066
(724) 772-8880
Toll Free (888) 717-4343
Fax (724) 772-8882
insurance@ridgeagency.com

**Policy Period**
From: 04/01/2022 To: 04/01/2023

**Policy Number**
Q52-5126605

Policy period begins and ends at 12:01 AM standard time at the location of the insured property. Until terminated, this policy will continue in force for successive policy periods by payment of the required premium.

**Named Insured and Address**
JOSHUA C JELLISON
JESSICA M JELLISON
126 PAX VIEW HILLS DR
LATROBE PA 15650-3509

**First Mortgagee**
PHH MORTGAGE
1 MORTGAGE WAY
SV22
MT LAUREL, NJ 08054

**Loan Number**
9010000850

* The amount of Insurance applying to the dwelling is the replacement cost at the time of the loss, subject to policy conditions and requirements. The estimated replacement cost of the dwelling is $273,000

## Section I Property Protection

| **Coverage:** | **Dwelling** | **Other Structures** | **Personal Property** | **Loss Of Use** |
|---|---|---|---|---|
| **Amount of Insurance:** | $273,000 *With Guaranteed Replacement Cost | $54,600 | $204,750 | Up to 12 Months |

**Deductible that applies to Section I:** $1,000

## Section II Home And Family Liability

| **Personal Liability** | **Medical Payments To Others** |
|---|---|
| $300,000 Each Occurrence | $1,000 Each Person |

| **Total Annual Premium** | **Payment Received** | **Balance** |
|---|---|---|
| $880.00 | $220.03 | $659.97 |

**Authorized Agent:** ______________________
**(Not valid unless signed by an authorized agent of the ERIE)**

CHRISTOPHER P. SKATELL
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*Email:* Skatellz@aol.com

# FACSIMILE COVER SHEET

TO: PHH MORTGAGE

FROM: MIKE

EMAIL ADDRESS:

DATE: 6-15-22

FAX NUMBER: 937-525-4210

TOTAL PAGES INCLUDING COVER: 3

PHONE NUMBER:

SENDER'S REFERENCE NUMBER:

RE: ACCOUNT # 9010000850

SENDER'S FAX NUMBER:

X URGENT ___ FOR REVIEW ___ PLEASE COMMENT X PLEASE REPLY

___ ORIGINAL TO FOLLOW X ORIGINAL WILL NOT FOLLOW

NOTES / COMMENTS:

THE INFORMATION IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION, INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE, VIA U.S. POSTAL SERVICE. THANK YOU FOR YOUR ATTENTION AND COOPERATION.

4503577700 P.01/01

# TRANSACTION REPORT

JUN/15/2022/WED 07:13 AM

FAX(TX)

| # | DATE | START T. | RECEIVER | COM.TIME | PAGE | TYPE/NOTE | | FILE |
|---|---|---|---|---|---|---|---|---|
| 001 | JUN/15 | 07:12AM | 19375254210 | 0:01:05 | 3 | MEMORY OK | ECM | 5180 |


CHRISTOPHER P. SKATELL

*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone:* (724) 853-0364
*Facsimile:* (724) 853-0310
*Email:* Skatellz@aol.com


## FACSIMILE COVER SHEET

TO: PHH MORTGAGE

FROM: Mike

EMAIL ADDRESS:

DATE: 6-15-22

FAX NUMBER: 937-525-4210

TOTAL PAGES INCLUDING COVER: 3

PHONE NUMBER:

SENDER'S REFERENCE NUMBER:

RE: Account # 9010000850

SENDER'S FAX NUMBER:

X URGENT ___ FOR REVIEW ___ PLEASE COMMENT X PLEASE REPLY

___ ORIGINAL TO FOLLOW ✓ ORIGINAL WILL NOT FOLLOW

NOTES / COMMENTS:

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

July 1, 2022

PHH MORTGAGE SERVICES
P.O. Box 5954
Springfield, OH 45501-5954

VIA FACSIMILE ONLY

RE: Joshua Cane Jellison
Jessica Marie Jellison
Property address: 126 Pax View Hills Dr., Latrobe, PA 15650
Account Number: 9010000850
Policy Number: MLR2114070063

To Whom it May Concern:

As you know, my office represents Joshua Cane Jellison and Jessica Marie Jellison with respect to the above identified account. As such, I am in receipt of your correspondence of June 16, 2022, in which you confirmed receipt of my clients' proof of hazard insurance for the coverage period of 4/1/2022 to 4/1/2023, and in which you confirmed that you have updated your records to reflect the same; thank you.

I also note that your correspondence identified another alleged deficiency period of 7/16/2021 to 4/1/2022. You further asked that we forward proof of coverage for this period if such coverage existed and stated that upon receipt of proof of the same that you would credit my clients' escrow account in the amount of $1,258.00. Please be advised that my clients did in fact have insurance coverage during the time frame for which you are seeking. Enclosed herewith, please find the declaration page for two (2) policies: one from 8/19/2020 to 8/19/2021, and one from 8/19/2021 to 8/19/2022. Between these two policies, the time frame identified in your correspondence is completely covered. As such, please issue the aforementioned refund to my clients' escrow account in the amount of $1,258.00 as you indicated in your letter.

Thank you for your time and prompt attention to this matter. Please forward confirmation that you have received the within proof of insurance and have issued the credit to my clients' escrow account. Thank you again.

Sincerely,

Christopher P. Skatell, Esquire

Enclosure: proof of home owner's insurance
CPS/mjk

EXHIBIT
O

Berkshire Hathaway GUARD Insurance Companies

HOMEOWNERS POLICY DECLARATIONS

AmGUARD Insurance Company
A Stock Company

**Issued:** 07/15/2020

**Policy No.:** JEHO186810 **Renewal of:** JEHO067474

## POLICY INFORMATION PAGE

**[1] Named Insured and Address**

Named Insured: Jessica Jellison

Residence Premises: 126 Pax View Hills Dr, Latrobe, PA 15650-3509

Mailing Address: same as residence premises

**[2] Agency**

MAHONING INSURANCE ASSOCIATES LLC, 107 E Mahoning St, Punxsutawney, PA 15767,

**[3] Policy Period**

**From** August 19, 2020 to August 19, 2021, 12:01 AM, standard time at the residence Premises

**[4] Coverage**

This policy consists of the Coverage Forms listed on the **Schedule of Forms and Endorsements**. Coverage is provided where a premium or limit of liability is shown (below) for the coverage.

| **Section I** | **Limits of Liability** | |
|---|---|---|
| A. Dwelling | $ 232,975 | |
| B. Other Structures | $ 23,298 | |
| C. Personal Property | $ 116,488 | |
| D. Loss of Use | $ 69,893 | |
| **Section II** | | |
| E. Personal Liability | $ 300,000 | Each Occurrence |
| F. Medical Payments to Others | $ 1,000 | Each Person |

**[5] Premium**

| | |
|---|---|
| Basic Policy Premium | $ 589.00 |
| Additional Premium Charges Related to Other Coverages or Endorsements<br>This amount is the total of the premium for all additional optional charges; the individual coverages and charges are shown on the next page.) | $ 217.00 |
| **Total Premium** | $ 806.00 |

In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.

HOMEOWNERS POLICY
DECLARATIONS

Issued: 07/15/2020

**Policy No.:** JEHO186810 **Effective Date:** 08/19/2020

**Deductible:**

Section I All Perils: $ 1000 Other - Theft: Same as All Peril Windstorm/Hail: Same as All Peril

**ADDITIONAL PROTECTION ELECTED**

| COVERAGE | LIMIT | PREMIUM |
|---|---|---|
| **Business Property** | | |
| Off-Premises Limit | 1,500 | |
| On-premises Limit | 2,500 | |
| **Coverage B – On-Premises Structures** | | 106.00 |
| **Coverage B – On-Premises Structures Schedule** | | |
| 1400 sq ft cement and metal garage | 60000 | |
| **Coverage C - Other Residences** | | |
| **Coverage C - Special Limits of Liability** | | |
| Jewelry, Watches and Furs Limit | 1,500 | |
| Money Limit | 200 | |
| Securities Limit | 1,500 | |
| Silverware, Goldware & Pewterware Limit | 2,500 | |
| Firearms Limit | 2,500 | |
| Portable Electronic Equipment in or upon a motor Vehicle Limit | 1,500 | |
| **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money Coverage** | | 1.00 |
| Limit | 1,000 | |
| **Damage to Property of Others** | | |
| Limit | 1,000 | |
| **Debris Removal** | | |
| Limit | 5%/1,000 | |
| **Fire Department Service Charge** | | |
| Limit | 500 | |
| **Grave Markers** | | |
| Limit | 5,000 | |
| **Home Systems Protection Coverage** | | 30.00 |
| Limit | 50,000 | |
| **Landlord's Furnishings** | | |
| Limit | 2,500 | |
| **Limited Fungi, Wet or Dry Rot or Bacteria Coverage** | | |
| Section I Limit | 10,000 | |
| Section II Limit | 50,000 | |
| **Service Line Coverage** | | 30.00 |
| Limit | 10,000 | |
| **Supplemental Loss Assessment Coverage** | | |
| Residence Premises Limit | 1,000 | |
| **Trees, Shrubs and Other Plants** | | |
| Limit | 5%/500 | |
| **Water Backup & Sump Overflow** | | 50.00 |
| Limit | 5,000 | |

Issued: 07/15/2020

**Policy No.:** JEHO186810 **Effective Date:** 08/19/2020

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Title |
|---|---|
| COVID-19 | COVID-19 Message |
| HO WEL LET | WELCOME LETTER |
| HO P 004 05 11 | LIMITED HOME DAY CARE COVERAGE ADVISORY NOTICE TO POLICYHOLDERS |
| HO P 063 10 15 | ADVISORY NOTICE TO POLICYHOLDERS |
| HO PRIV POL | PRIVACY POLICY |
| IL 09 10 07 02 | PENNSYLVANIA NOTICE |
| IL P 001 01 04 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ('OFAC') ADVISORY NOTICE TO POLICYHOLDERS |
| HO DEC 07 18 | HOME OWNERS POLICY DECLARATIONS |
| HO 37 03 08 11 | HOMEOWNERS 3 - SPECIAL FORM - PENNSYLVANIA |
| HO 02 37 08 11 | AMENDATORY ENDORSEMENT - PENNSYLVANIA |
| HO 04 27 05 11 | LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE |
| HO 04 48 10 00 | OTHER STRUCTURES |
| HO 04 53 10 00 | CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE |
| HO 06 48 10 15 | RESIDENCE PREMISES DEFINITION ENDORSEMENT |
| HO 06 53 02 17 | HOME-SHARING HOST ACTIVITIES AMENDATORY ENDORSEMENT |
| HO 23 81 01 14 | LIMITED WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW COVERAGE - PENNSYLVANIA |
| HO 34 02 02 17 | AIRCRAFT LIABILITY DEFINITION REVISED TO REMOVE EXCEPTION FOR MODEL OR HOBBY AIRCRAFT |
| HO 99 83 08 17 | PROTECTIVE DEVICES |
| HO 99 89 06 17 | SERVICE LINE COVERAGE |
| HO 99 90 06 17 | HOME SYSTEMS PROTECTION |
| HO FCRA | Notice of Consumer Rights Under the Fair Credit Report Act |
| IL 99 00 08 13 | Authorization and Attestation |

Issued: 07/15/2020

**Policy No.:** JEHO186810 **Effective Date:** 08/19/2020

## OTHER INSURED LOCATIONS

Address(es)

## MORTGAGEE(S)/LIENHOLDER(S)

| Name | Address | Loan Number |
|---|---|---|

## LOSS PAYEE(S)

| Name | Address | Personal Property |
|---|---|---|

Issued: 07/15/2020

**Policy No.:** JEHO186810 **Effective Date:** 08/19/2020

## PROTECTIVE DEVICES

As a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 83 attached to your policy. You should also be prepared to supply proof of proper maintenance upon request.

**Name of Device**

Fire Alarm: Local/Smoke Detector

HOMEOWNERS POLICY
DECLARATIONS

Issued: 07/15/2020

**Policy No.:** JEHO186810 **Effective Date:** 08/19/2020

## RECAP OF UNDERLYING POLICY INFORMATION PROVIDED TO US

Your coverage with us has been written based on the following information provided by you either directly or through your authorized representative:

### Information about the Residence

| | |
|---|---|
| Year built | 1978 |
| Square footage | 1717 |
| Type occupancy | Owner Occupied |
| Number of families accommodated | 1 |
| Owner or tenant occupied | Owner |
| Type electrical box | Circuit Breaker |
| Most recent plumbing update | N/A |
| Number of losses in last three years | 0 |
| **(New Home Buyers Only)** | |
| Date of Inspection – N/A for Not Applicable | N/A |

### Roof

| | |
|---|---|
| Date of last update | 2016 |
| Shape | Gable |
| Primary covering used | Composition - Impact Resist. Shingle |
| Hail resistance class | Class 1 |

### Heating

| | |
|---|---|
| Primary Type | Natural Gas |
| Other Secondary Type(s)/Appliances Used | N/A |

### Pets

| | |
|---|---|
| Pets | No |
| Number of dogs | N/A |
| Breed(s) includes one of the following -- pit bulls, Rottweilers, Wolf Hybrids, or a mixed breed that includes one of these. | N/A |
| History of Biting | N/A |
| Exotic | N/A |
| Description<br>N/A | |

| Further Details | Yes | No | N/A |
|---|---|---|---|
| Purchased within the last six months | | X | |
| Primarily used for residential purposes | X | | |
| Seasonal/secondary dwelling | | X | |
| Dwelling will not be unoccupied for more than 30 days | X | | |
| Mobile home, trailer home, or house trailer | | X | |
| Underground oil tanks on property | | X | |
| Swimming pool | | X | |
| Swimming pool within area enclosed by a fence | | | X |
| Diving board for swimming pool | | | X |
| Trampoline | | X | |
| Trampoline in enclosed area | | | X |
| Use of drones | | X | |
| Any residents with a history of smoking | | X | |
| Used as a farm | | X | |
| Structure is a rowhouse/townhouse | | X | |
| Features log home constructions | | X | |

Berkshire Hathaway GUARD Insurance Companies

**HOMEOWNERS POLICY DECLARATIONS**

**Issued:** 07/15/2021

**AmGUARD Insurance Company**
**A Stock Company**

**Policy No.:** JEHO261530 **Renewal of:** JEHO186810

**POLICY INFORMATION PAGE**

**[1] Named Insured and Address**

Named Insured: Jessica Jellison

Residence Premises: 126 Pax View Hills Dr, Latrobe, PA 15650-3509

Mailing Address: same as residence premises

**[2] Agency**
MAHONING INSURANCE ASSOCIATES LLC, 107 E Mahoning St, Punxsutawney, PA 15767,

**[3] Policy Period**
**From** August 19, 2021 to August 19, 2022, 12:01 AM, standard time at the residence Premises

**[4] Coverage**
This policy consists of the Coverage Forms listed on the **Schedule of Forms and Endorsements**. Coverage is provided where a premium or limit of liability is shown (below) for the coverage.

| | **Limits of Liability** | |
|---|---|---|
| **Section I** | | |
| A. Dwelling | $ 263,076 | |
| B. Other Structures | $ 26,308 | |
| C. Personal Property | $ 131,539 | |
| D. Loss of Use | $ 78,923 | |
| **Section II** | | |
| E. Personal Liability | $ 300,000 | Each Occurrence |
| F. Medical Payments to Others | $ 1,000 | Each Person |

**[5] Premium**

| | |
|---|---|
| Basic Policy Premium | $ 650.00 |
| Additional Premium Charges Related to Other Coverages or Endorsements<br>This amount is the total of the premium for all additional optional charges; the individual coverages and charges are shown on the next page.) | $ 217.00 |
| **Total Premium** | $ 867.00 |

In return for your payment of premium, and subject to all terms of this policy, we agree with you to provide insurance as stated in this policy.

HOMEOWNERS POLICY
DECLARATIONS

Issued: 07/15/2021

**Policy No.:** JEHO261530 **Effective Date:** 08/19/2021

**Deductible:**

Section I All Perils: $ 1000 Other - Theft: Same as All Peril Windstorm/Hail: Same as All Peril

**ADDITIONAL PROTECTION ELECTED**

| COVERAGE | LIMIT | PREMIUM |
|---|---|---|
| **Business Property** | | |
| Off-Premises Limit | 1,500 | |
| On-premises Limit | 2,500 | |
| **Coverage B – On-Premises Structures** | | 106.00 |
| **Coverage B – On-Premises Structures Schedule** | | |
| 1400 sq ft cement and metal garage | 60000 | |
| **Coverage C - Other Residences** | | |
| Limit | 13,154 | |
| **Coverage C - Self-storage Facilities** | | |
| Limit | 13,154 | |
| **Coverage C - Special Limits of Liability** | | |
| Jewelry, Watches and Furs Limit | 1,500 | |
| Money Limit | 200 | |
| Securities Limit | 1,500 | |
| Silverware, Goldware & Pewterware Limit | 2,500 | |
| Firearms Limit | 2,500 | |
| Portable Electronic Equipment in or upon a motor Vehicle Limit | 1,500 | |
| **Credit Card, Electronic Fund Transfer Card or Access Device, Forgery and Counterfeit Money Coverage** | | 1.00 |
| Limit | 1,000 | |
| **Damage to Property of Others** | | |
| Limit | 1,000 | |
| **Debris Removal** | | |
| Limit | 5%/1,000 | |
| **Fire Department Service Charge** | | |
| Limit | 500 | |
| **Grave Markers** | | |
| Limit | 5,000 | |
| **Home Systems Protection Coverage** | | 30.00 |
| Limit | 50,000 | |
| **Landlord's Furnishings** | | |
| Limit | 2,500 | |
| **Limited Fungi, Wet or Dry Rot or Bacteria Coverage** | | |
| Section I Limit | 10,000 | |
| Section II Limit | 50,000 | |
| **Service Line Coverage** | | 30.00 |
| Limit | 10,000 | |
| **Supplemental Loss Assessment Coverage** | | |
| Residence Premises Limit | 1,000 | |
| **Trees, Shrubs and Other Plants** | | |
| Limit | 5%/500 | |
| **Water Backup & Sump Overflow** | | 50.00 |
| Limit | 5,000 | |

Issued: 07/15/2021

**Policy No.:** JEHO261530 **Effective Date:** 08/19/2021

Issued: 07/15/2021

**Policy No.:** JEHO261530 **Effective Date:** 08/19/2021

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Form Number | Title |
|---|---|
| COVID-19 | COVID-19 Message |
| HO P 004 05 11 | LIMITED HOME DAY CARE COVERAGE ADVISORY NOTICE TO POLICYHOLDERS |
| HO P 063 10 15 | ADVISORY NOTICE TO POLICYHOLDERS |
| HO PRIV POL | PRIVACY POLICY |
| IL 09 10 07 02 | PENNSYLVANIA NOTICE |
| IL P 001 01 04 | U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ('OFAC') ADVISORY NOTICE TO POLICYHOLDERS |
| HO DEC 07 18 | HOME OWNERS POLICY DECLARATIONS |
| HO 37 03 08 11 | HOMEOWNERS 3 - SPECIAL FORM - PENNSYLVANIA |
| HO 02 37 08 11 | AMENDATORY ENDORSEMENT - PENNSYLVANIA |
| HO 04 27 05 11 | LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE |
| HO 04 48 10 00 | OTHER STRUCTURES |
| HO 04 53 10 00 | CREDIT CARD, FUND TRANSFER CARD, FORGERY AND COUNTERFEIT MONEY COVERAGE |
| HO 06 48 10 15 | RESIDENCE PREMISES DEFINITION ENDORSEMENT |
| HO 06 53 02 17 | HOME-SHARING HOST ACTIVITIES AMENDATORY ENDORSEMENT |
| HO 23 81 01 14 | LIMITED WATER BACK-UP AND SUMP DISCHARGE OR OVERFLOW COVERAGE - PENNSYLVANIA |
| HO 34 02 02 17 | AIRCRAFT LIABILITY DEFINITION REVISED TO REMOVE EXCEPTION FOR MODEL OR HOBBY AIRCRAFT |
| HO 99 83 08 17 | PROTECTIVE DEVICES |
| HO 99 89 06 17 | SERVICE LINE COVERAGE |
| HO 99 90 06 17 | HOME SYSTEMS PROTECTION |
| HO FCRA | Notice of Consumer Rights Under the Fair Credit Report Act |
| IL 99 00 08 13 | Authorization and Attestation |

Issued: 07/15/2021

**Policy No.:** JEHO261530 **Effective Date:** 08/19/2021

## OTHER INSURED LOCATIONS

Address(es)

## MORTGAGEE(S)/LIENHOLDER(S)

| Name | Address | Loan Number |
| --- | --- | --- |

## LOSS PAYEE(S)

| Name | Address | Personal Property |
| --- | --- | --- |

HOMEOWNERS POLICY
DECLARATIONS

Issued: 07/15/2021

**Policy No.:** JEHO261530 **Effective Date:** 08/19/2021

## PROTECTIVE DEVICES

As a condition of this insurance, you MUST maintain the protective devices or services shown below and discussed on form HO 99 83 attached to your policy. You should also be prepared to supply proof of proper maintenance upon request.

**Name of Device**

Fire Alarm: Local/Smoke Detector

HOMEOWNERS POLICY
DECLARATIONS

Issued: 07/15/2021

**Policy No.:** JEHO261530 **Effective Date:** 08/19/2021

### RECAP OF UNDERLYING POLICY INFORMATION PROVIDED TO US

Your coverage with us has been written based on the following information provided by you either directly or through your authorized representative:

**Information about the Residence**

| | |
|---|---|
| Year built | 1978 |
| Square footage | 1717 |
| Type occupancy | Owner Occupied |
| Number of families accommodated | 1 |
| Owner or tenant occupied | Owner |
| Type electrical box | Circuit Breaker |
| Most recent plumbing update | N/A |
| Number of losses in last three years | 0 |
| **(New Home Buyers Only)** | |
| Date of Inspection – N/A for Not Applicable | N/A |

**Roof**

| | |
|---|---|
| Date of last update | 2016 |
| Shape | Gable |
| Primary covering used | Composition - Impact Resist. Shingle |
| Hail resistance class | Class 1 |

**Heating**

| | |
|---|---|
| Primary Type | Natural Gas |
| Other Secondary Type(s)/Appliances Used | N/A |

**Pets**

| | |
|---|---|
| Pets | No |
| Number of dogs | N/A |
| Breed(s) includes one of the following -- pit bulls, Rottweilers, Wolf Hybrids, or a mixed breed that includes one of these. | N/A |
| History of Biting | N/A |
| Exotic | N/A |
| Description<br>N/A | |

| **Further Details** | **Yes** | **No** | **N/A** |
|---|---|---|---|
| Purchased within the last six months | | X | |
| Primarily used for residential purposes | X | | |
| Seasonal/secondary dwelling | | X | |
| Dwelling will not be unoccupied for more than 30 days | X | | |
| Mobile home, trailer home, or house trailer | | X | |
| Underground oil tanks on property | | X | |
| Swimming pool | | X | |
| Swimming pool within area enclosed by a fence | | | X |
| Diving board for swimming pool | | | X |
| Trampoline | | X | |
| Trampoline in enclosed area | | | X |
| Use of drones | | X | |
| Any residents with a history of smoking | | X | |
| Used as a farm | | X | |
| Structure is a rowhouse/townhouse | | X | |
| Features log home constructions | | X | |

CHRISTOPHER P. SKATELL
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*Email:* Skatellz@aol.com

# FACSIMILE COVER SHEET

TO: PHH MORTGAGE

FROM: Mike

EMAIL ADDRESS:

DATE: 7-1-22

FAX NUMBER: 937-525-4210

TOTAL PAGES INCLUDING COVER: 15

PHONE NUMBER:

SENDER'S REFERENCE NUMBER:

RE: ACCOUNT # 9010000850

SENDER'S FAX NUMBER:

X URGENT ____ FOR REVIEW ____ PLEASE COMMENT X PLEASE REPLY

____ ORIGINAL TO FOLLOW X ORIGINAL WILL NOT FOLLOW

NOTES / COMMENTS:

THE INFORMATION IN THIS FACSIMILE MESSAGE IS ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION, INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION, OR COPY OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS ABOVE, VIA U.S. POSTAL SERVICE. THANK YOU FOR YOUR ATTENTION AND COOPERATION.

4503577700 P.01/01

# TRANSACTION REPORT

JUL/01/2022/FRI 07:12 AM

FAX(TX)

| # | DATE | START T. | RECEIVER | COM.TIME | PAGE | TYPE/NOTE | FILE |
|---|---|---|---|---|---|---|---|
| 001 | JUL/01 | 07:07AM | 9375254210 | 0:05:33 | 15 | MEMORY OK ECM | 5213 |


CHRISTOPHER P. SKATELL

*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*Email:* Skatellz@aol.com


## FACSIMILE COVER SHEET

TO: PHH MORTGAGE

FROM: Mike

EMAIL ADDRESS:

DATE: 7-1-22

FAX NUMBER: 937-525-4210

TOTAL PAGES INCLUDING COVER: 15

PHONE NUMBER:

SENDER'S REFERENCE NUMBER:

RE: Account # 9010000850

SENDER'S FAX NUMBER:

X URGENT ___ FOR REVIEW ___ PLEASE COMMENT X PLEASE REPLY

___ ORIGINAL TO FOLLOW X ORIGINAL WILL NOT FOLLOW

NOTES / COMMENTS:

PHH MORTGAGE

P O BOX 5954, SPRINGFIELD, OH 45501-5954

July 7, 2022

Account Number: 9010000850

JOSHUA CANE JELLISON
JESSICA MARIE JELLISON
C/O CHRISTOPHER P. SKATELL
5142 ROUTE 30
GREENSBURG, PA 15601

Property Address:
126 PAX VIEW HILLS DR
LATROBE, PA 15650

# INSURANCE STATUS ON THIS ACCOUNT

Dear Customer(s),

**Why We Are Sending This Letter**

Thank you for providing the requested evidence of hazard insurance coverage. We have updated our records to reflect this current.

The cancellation effective date has been adjusted to 08/19/2021.

**What Needs To Be Done**

Our records indicate that there is still a lapse in coverage from 07/16/2021 to 08/19/2021. A total charge of $165.00 was assessed to your account during the period of time that the coverage we obtained for you was in place.

Please provide us with evidence of hazard insurance for this lapse period. Any unused premium will be refunded to your account once we receive proof of acceptable coverage.

To ensure that we do not purchase the insurance required by the Security Instrument on behalf of this account in the future, we should be provided proof of acceptable of hazard insurance on a timely, annual basis.

**What We Will Do**

We have updated the insurance status of the property. Any unused premium that has been charged to the mortgage or escrow account will be refunded.

**For any questions,** the Customer Care Center can be reached toll-free at 1-888-882-1855, Monday through Friday 8 a.m. to 9 p.m. ET, and Saturday 8 a.m. to 5 p.m. ET.

Sincerely,

*Loan Servicing*

Enclosure

EXHIBIT P

Account Number: 9010000850

**IMPORTANT NOTICE**

If there is an inability to pay the premium for voluntary home, condominium, flood or wind insurance, we may be able to assist.

If the desire is to obtain, maintain, or increase voluntary insurance coverage, but there is an inability to pay the premium, PHH MORTGAGE SERVICES will advance the premium. If necessary, PHH MORTGAGE SERVICES will request the insurance agent or company immediately reinstate the voluntary insurance coverage without lapse. PHH MORTGAGE SERVICES will establish an escrow/impound account to collect for repayment of the advanced insurance premium, as well as all future insurance disbursements for all required property insurance coverage.

By signing this form, I/We agree to the following terms:

- PHH MORTGAGE SERVICES will establish an escrow/impound account for all required property insurance coverage.
- I/We will provide PHH MORTGAGE SERVICES a copy of the insurance premium invoice for the voluntary insurance policy and will notify the insurance agent or carrier that all future insurance premiums will be paid by PHH MORTGAGE SERVICES.
- All insurance premiums advanced by PHH MORTGAGE SERVICES will be repaid through the established escrow/impound account, which may increase the total monthly payment.
- All future required insurance premiums to be collected by PHH MORTGAGE SERVICES will be collected through the established escrow/impound account, which may increase the total monthly payment.
- PHH MORTGAGE SERVICES will manage the escrow/impound account in accordance with the loan documents as well as applicable law.

I/We, agree to the terms listed above and request that PHH MORTGAGE SERVICES proceed with the payment of the insurance premium identified on the enclosed insurance premium invoice. I/We understand every effort will be made to advance the insurance premium to the insurance agent or company designated on the premium invoice in a timely manner. PHH MORTGAGE SERVICES is not liable for any failure of the insurer to receive or accept the premium or to reinstate the policy. In the event the insurer fails to accept the premium and reinstate the policy, any refund of premium I/we receive will immediately be returned to PHH MORTGAGE SERVICES to be credited to the escrow account.

Signature: ______________________________

Signature: ______________________________

Date: ______________________________

Please upload the signed notice, along with a copy of the current insurance premium invoice, at www.mycoverageinfo.com/mortgagefamily and follow the steps to upload the required documents, or mail or fax it using the information listed below:

PHH MORTGAGE SERVICES
ITS SUCCESSORS AND/OR ASSIGNS
AS THEIR INTEREST MAY APPEAR
P O BOX 5954
SPRINGFIELD, OH 45501-5954
Or Fax to: 1-937-525-4210

**NAMED INSURED MORTGAGEE** - Name and Address

Date: 07/07/2022

PHH MORTGAGE SERVICES
ITS SUCCESSORS AND/OR ASSIGNS
AS THEIR INTEREST MAY APPEAR
P O BOX 5954
SPRINGFIELD, OH 45501-5954

**American Security Insurance Company**
PO Box 50355, Atlanta, GA 30302
A Stock Insurance Company

# LENDER-PLACED INSURANCE CONFIRMATION OF CANCELLATION

**BORROWER / MORTGAGOR** - Name and Address
JOSHUA CANE JELLISON
JESSICA MARIE JELLISON
C/O CHRISTOPHER P. SKATELL
5142 ROUTE 30
GREENSBURG, PA 15601

**DESCRIBED LOCATION:**
126 PAX VIEW HILLS DR
LATROBE, PA 15650

**LOAN NUMBER:** 9010000850
**CERTIFICATE NUMBER:** MLR2114070063

Dear Customer:

The Named Insured Mortgagee/Lender has requested cancellation of the lender-placed insurance that was issued in compliance with your mortgage/lien agreement. This cancellation is effective on 08/19/2021 at 12:01 a.m. Standard Time at the described location shown above. The reason for this cancellation is:

Named Insured's Request.

If you have any questions, please feel free to call your mortgage lender at 1-888-882-1855.

Sincerely,

Insurance Department

**IMPORTANT NOTICE** IF YOU HAVE ANY TROUBLE GETTING NEW INSURANCE, ANY INSURANCE AGENT OR BROKER MAY GET FIRE, EXTENDED COVERAGE AND VANDALISM AND MALICIOUS MISCHIEF INSURANCE FOR YOU THROUGH THE PENNSYLVANIA FAIR PLAN IF YOU ARE ELIGIBLE FOR IT.

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

July 22, 2022

PHH MORTGAGE SERVICES
P.O. Box 5954
Springfield, OH 45501-5954

VIA FACSIMILE ONLY

RE: Joshua Cane Jellison
Jessica Marie Jellison
Property address: 126 Pax View Hills Dr., Latrobe, PA 15650
Account Number: 9010000850
Policy Number: MLR2114070063

To Whom it May Concern:

As you know, my office represents Joshua Cane Jellison and Jessica Marie Jellison with respect to the above identified account. As such, I am in receipt of your correspondence of July 7, 2022, in which you confirmed receipt of my clients' proof of hazard insurance coverage. I note that your correspondence further identifies yet another alleged period of time in which your company claims there was a gap in coverage. More specifically, you note the time frame of July 16, 2021 to August 19, 2021.

Please note that you first wrote on June 1, 2022 regarding an alleged lack of then-current coverage. As such, I forwarded to you proof of coverage on June 15, 2022. You acknowledged receipt of the proof of coverage by way of correspondence dated June 16, 2022. In that correspondence, however, you went on to identify an additional deficiency period of Jul 16, 2021 to April 1, 2022. Accordingly, on July 1, 2022 I forwarded two (2) policies evidencing coverage: one policy covered 8/19/2020 to 8/19/2021 and the other policy covered 8/19/2021 to 8/19/2022. This brings us back to your most recent correspondence dated July 7, 2022 in which you acknowledge receipt of the proof of coverage that I forwarded to you on July 1, 2022. Strangely, however, you have now stated that there is a period of time from July 16, 2021 to August 19, 2021 in which you are missing evidence of coverage. You have already acknowledged receipt of the two policies that I forwarded to you on July 1, 2022. These two policies cover the time frame of July 16, 2021 to August 19, 2021 that you are now seeking. Accordingly, you already have proof of coverage for this time frame.

EXHIBIT
Q

Please confirm that you have corrected your records, and that the total charge of $165.00 that you reference in your July 7th letter has been refunded to my clients' account. Thank you for your prompt attention to this matter.

Sincerely,

Christopher P. Skatell, Esquire

CPS/mjk

*CHRISTOPHER P. SKATELL*
*Attorney at Law*

*Eastgate Shopping Plaza, 2nd Floor*
*5142 Route 30*
*Greensburg, PA 15601*

*Telephone: (724) 853-0364*
*Facsimile: (724) 853-0310*
*E-mail: Skatellz@aol.com*

October 25, 2022

PHH MORTGAGE SERVICES
1 Mortgage Way SV22
Mt. Laurel, NJ 08054

VIA FEDEX

RE: Joshua Cane Jellison
Jessica Marie Jellison
FHA Covid-19 Recovery Standalone Partial Claim
Account Number: 9010000850
Property address: 126 Pax View Hills Dr., Latrobe, PA 15650.

To Whom it May Concern:

Please be advised that I am in receipt of your correspondence of October 17, 2022, in which you have approved the reversal of the modification denial (a copy of said correspondence is enclosed herewith for your convenience). Pursuant to your directions in said correspondence, enclosed herewith is my clients' required check in the amount of $8,717.84. It is my understanding that this will now place my clients' account in good standing. Thank you for your prompt attention to this matter.

Sincerely,

Christopher P. Skatell, Esquire

Enclosures: PHH Mortgage correspondence dated 10-17-22 and $8,717.84 check.
CPS/mjk

EXHIBIT
R

JOSHUA C. JELLISON
JESSICA M. JELLISON
126 PAX VIEW HILLS DR.
LATROBE, PA 15650-3509

771

8-9/430
196

October 25, 2022
Date

Pay to the Order of PHH Mortgage $ 8,717.84

Eight thousand seven hundred seventeen 84/100 Dollars

Photo Safe Deposit® Details on back

PNCBANK

PNC Bank, N.A. 001

For

Jessica Jellison

MP

⑆043000096⑆ 1034977412⑈ 0771

Harland Clarke

CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

On behalf of: Joshua Cane Jellison and
Jessica Marie Jellison,
Plaintiffs

Christopher P. Skatell, Esquire
Attorney ID: 68838

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| JOSHUA CANE JELLISON, and<br>JESSICA MARIE JELLISON, his wife,<br><br>Plaintiffs,<br><br>vs.<br><br>PHH MORTGAGE CORPORATION,<br><br>Defendant. | ) | No. 1413 of 2023 |

Type of Pleading:
**AFFIDAVIT OF SERVICE OF COMPLAINT**

Filed on behalf of
Joshua Cane Jellison, and
Jessica Marie Jellison, his wife.
Plaintiffs.

FILED
PROTHONOTARY'S OFFICE
WESTMORELAND COUNTY
2023 APR 17 P 1:18
GINA O'BARTO
TIME IN

Counsel of Record for this Party:
Christopher P. Skatell, Esquire
PA ID# 68838

Eastgate Shopping Plaza, 2nd Floor
5142 Route 30
Greensburg, PA 15601

(724) 853 - 0364

**IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PENNSYLVANIA**

**CIVIL DIVISION**

| | | |
|---|---|---|
| JOSHUA CANE JELLISON, and JESSICA MARIE JELLISON, his wife, | ) | |
| Plaintiffs, | ) | |
| vs. | ) | No. 1413 of 2023 |
| PHH MORTGAGE CORPORATION, | ) | |
| Defendant. | ) | |

**AFFIDAVIT OF SERVICE OF COMPLAINT BY MAIL**

Christopher P. Skatell, Esquire, being duly sworn, upon oath, deposes and says as follows:

1. I am the attorney for Joshua Cane Jellison and Jessica Marie Jellison, Plaintiffs, in the above-entitled cause. On April 11, 2023, I caused to be transmitted, pursuant to *Pa.R.C.P. No. 403* and *Pa.R.C.P. No. 404(2)*, a copy of the Complaint in this action, via Certified Mail, to the following Defendant: PHH Mortgage Corporation, 1 Mortgage Way, Mount Laurel, NJ 08054.

2. I received the Return Receipt green card from the US Postal Service showing that the Complaint was signed for and accepted by the Defendant or its agent on April 13, 2023. As such, Service was made on April 13, 2023 (see Certified Mail receipt, and Return Receipt green card attached hereto, made a part hereof, and marked as Exhibit "A").

Christopher P. Skatell, Esquire

7017 1000 0000 3840 9697

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$
Extra Services & Fees (*check box, add fee as appropriate*)
- ☐ Return Receipt (hardcopy) $
- ☐ Return Receipt (electronic) $
- ☐ Certified Mail Restricted Delivery $
- ☐ Adult Signature Required $
- ☐ Adult Signature Restricted Delivery $

Postage
$
Total Postage and Fees
$

Postmark Here
GREENSBURG PA 15601-9998 USPS APR 11 2023

Sent To PHH MORTGAGE CORPORATION
Street and Apt. No., or PO Box No. 1 MORTGAGE WAY
City, State, ZIP+4® MOUNT LAUREL, NJ 08054

PS Form 3800, April 2015 PSN 7530-02-000-9047 See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

PHH MORTGAGE CORPORATION
1 MORTGAGE WAY
MOUNT LAUREL, NJ 08054

9590 9402 6667 1060 8595 14

2. Article Number (*Transfer from service label*)
7017 1000 0000 3840 9697

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X [signature] ☐ Agent ☐ Addressee

B. Received by (*Printed Name*) C. Date of Delivery
APR 13 2023

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)
- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☐ Signature Confirmation™
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053 Domestic Return Receipt

EXHIBIT
tabbies®
A

CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

On behalf of: Joshua Cane Jellison and
Jessica Marie Jellison,
Plaintiffs

Christopher P. Skatell, Esquire
Attorney ID: 68838

CERTIFICATE OF SERVICE

I, Christopher P. Skatell, hereby certify that a true and correct copy of the foregoing Affidavit of Service has been served, via United States Postal Service, first class mail, postage pre-paid, on this 17th day of APRIL, 2023, upon the following:

PHH Mortgage Corporation
1 Mortgage Way
Mount Laurel, NJ 08054

Christopher P. Skatell, Esquire
Attorney for the Plaintiffs